No. 697

First Circuit

___

HAIK v. UNITED STATES FIDELITY & GUARANTY CO.

___

(October 8, 1930. Opinion and Decree.)
(December 1, 1930. Rehearing Refused.)

___

Adrian D. Schwartz, of Covington, attorney for plaintiff, appellee.

Miller & Heintz, of Covington, attorneys for defendant, appellant.

MOUTON, J. The defendant company issued an insurance policy on a Peerless seven-passenger auto in favor of plaintiff. In May, 1928, during the term of the policy, the car, while being driven by the plaintiff, fell in a hole, and was damaged, requiring repairs to the sum of $227.35, which was paid by plaintiff, and was recovered against defendant in this suit.

The portion of the policy pertinent to the issue presented for decision provides for indemnity for loss or damage to the auto "caused solely by accidental collision with another object."

Plaintiff left Covington, where he was living, with members of his family on a Sunday morning about 7 o'clock, for an outing to Reserve, and on his way stopped in Bogalusa, where he took up some friends for the trip. There were about eleven persons in his auto, counting the children. After leaving Bogalusa, when only a few miles from that place, being overtaken in a torrential rain, he proceeded towards the house of a Mr. Evans, intending to find shelter there, and in trying to pass around a small post, his auto fell in a hole, where it was damaged. There is nothing to indicate that plaintiff fell into this hole through his fault, carelessness, or negligence. The fall in the hole was therefore purely accidental, and the only question which remains for solution under the terms of the policy is as to whether or not there resulted therefrom "a collision" between the car and "another object."

It is shown that Mr. Evans had, some time before the accident, operated a gas station near his home, had subsequently removed oil or gasoline tanks from there, leaving the hole into which plaintiff's auto fell, as above stated. The hole was 6 feet deep, and had been filled by Mr. Evans with bricks, wood, and dirt.

The clause of the policy, to which we have hereinabove referred, provides for insurance against damages which might result from a collision between plaintiff's auto and "another object." We all know that an object may be real, visible, and tangible, or may be apprehended or conceived only by the understanding. The latter, obviously, must be eliminated from consideration in construing an insurance policy in a case of this nature. This elimination is made in Berry, Law of Automobiles, vol. 6, from which plaintiff quotes the following:

"The word object means anything that comes within the cognizance, or scrutiny of the senses, especially anything that is tangible or visible. * * * As used in a policy of insurance it includes water and land. So it is used to include both perpendicular and horizontal objects, including the flat earth."

Evidently the wood, bricks, and dirt which had been thrown in that hole, whether they laid in there perpendicularly or horizontally, were by their nature, within the meaning of the policy, tangible and visible objects. If invisible at the time, this invisibility was caused by the heavy rain that had just fallen, and which made them more treacherous and dangerous.

It is shown that plaintiff, after the accident, did not go to Reserve, as he had planned, but returned to Covington, his home, where the auto was examined by a local mechanic. As the trouble could not be discovered, plaintiff phoned to Mr. Oster in New Orleans, from whom he had bought the auto. A mechanic was sent by Mr. Oster to Covington, who, after an inspection of the auto, had it shipped to New Orleans for the repairs which might be found to be needed.

Mr. Oster is engaged in the automobile repair business, and made the necessary repairs. His testimony is to the effect that the motor was burned up, and that the pump had been broken; also the crank case directly under the pump. He says, that "the crank-case under the oil pump showed the impact," etc.

Technically speaking, a collision or impact would mean the striking against each other of two bodies in motion. Part of the clause of the policy, we have quoted, refers generally to collision with "another object." Such a provision in an insurance policy, in the absence of more specific language, cannot be restricted to a collision with another "moving" object. When the object is real or tangible, whether moving, permanent, stable, inanimate, or immovable, a collision with it comes within the terms of that clause of the policy to which we have referred, and entitles the insurer to relief, if accidental, which was clearly shown to have been the case here.

It is evident in this case that in falling in that hole plaintiff's auto came in contact or collided with some wood, bricks, or dirt which had been thrown into it by Mr. Evans when he undertook to fill it up.

Mr. Oster said that the pump and the crank case, directly under it, had been broken, which he said showed the impact. Evidently these breaks were the result of the collision, as it was shown that the auto was practically new, and had been found in good condition after being looked over by an automobile mechanic, the day before the accident. In that make of cars, it was shown that the oil pump distributes oil to the motor, which being injured caused the bearings to burn up, thereby preventing the splashings of oil to the pistons, no doubt, all of which was the direct result of the collision of the auto with some fixed object in the hole.

Counsel for defendant company, it seems, contend that the condition of the car was caused by plaintiff, by venturing immediately after the accident on a return trip to Covington, some 56 miles away; their contention being, in substance, that before starting back, plaintiff should have had the car inspected and the trouble remedied. The proof shows that Mr. Castera, the officer in a garage in Covington, was called over the phone by plaintiff and came up to the scene with a wrecker to pull the car out of the hole. After it was pulled out, Mr. Mitchel Haik, son of the plaintiff, asked Mr. Castera if the car would be "all right" for a drive back to Covington. Mr. Castera, who is an experienced automobile driver, looked at the indicator, had Haik to start the motor, saw he had all the oil needed, and, not seeing anything wrong with the auto, told him he could "go ahead all right."

Plaintiff, it appears, knows little, if anything, about the mechanism of an auto and started back, as he felt assured he could, after receiving the advice from Mr. Castera. On their way back, plaintiff stopped at a garage in Bogalusa, had the oil drawn out of the auto and replaced with new oil to make the rest of the trip. This action on his part, and the fact that he consulted with Mr. Castera before starting on his way to Covington, show that he was cautious and careful in the management of the auto.

Defendant insists that, notwithstanding the advice of Mr. Castera, plaintiff should have had, before leaving the Evans house, an inspection of his auto, which he could have obtained, it is claimed, at a filling station then in operation at Pearl River, a few miles distant from where the accident occurred. There is nothing to indicate that plaintiff was advised to go to that station to have his car examined or as a matter of fact that there was, to his knowledge, such a station there, and that he could have found at the station any one who could have made an authoritative inspection of his car. There is therefore nothing in the record to show that plaintiff was in any way careless or negligent because he did not go to that filling station to have his car examined before returning to his home.

He had been caught, the evidence shows, in a roaring rainstorm, which had flooded the country through which he was traveling, and had been forced to stop near Mr. Evans' place, where he was seeking a refuge for himself, his children, wife, and other occupants of his car, when he was suddenly and unexpectedly plunged into that excavation which had been caused by the removal of an oil or gasoline tank. It was shown that himself and his companions were drenched to the skin before getting into Mr. Evans' home; that it was only many hours after the accident that his car was extricated from the hole; that his companions, children, wife, and himself, were naturally under considerable strain, and evidently, to their disappointment had to return without going to Reserve, where they intended to pass the day. Under such trying circumstances, it must, in all reasonableness, be held that plaintiff's conduct was all that could have been expected, and that he is not in the least chargeable with negligence or carelessness in thus returning to Covington.

The proximate cause of the injury to the auto was its collision with some object in the hole in which it fell, and cannot be ascribed to any action of the plaintiff, either before or after the accident.

The court correctly held defendant liable for $227.35 paid by plaintiff for the repairs to his car.