HARDY, J.
This is a suit by plaintiffs, husband and wife, against defendant as the accident insurer of plaintiff’s automobile. Plaintiff sued for $317.46, together with penalties and attorney’s fees. There was judgment in favor of plaintiffs in the sum of $250, which amount has been stipulated by counsel for the respective parties litigant as the measure of damages. From this judgment defendant has appealed.
There is no material dispute as to the facts concerned. About 4:00 o’clock P.M. on September 7, 1952, the plaintiff, Lloyd R. Womack, was driving the community automobile on Louisiana Highway No. 17 from *662 Chatham toward Columbia. He was accompanied by his wife and his mother, who occupied the rear seat, and his wife’s grandmother, who was on the front seat with the plaintiff driver. For a considerable distance out of Chatham highway No. 17 is graveled, and the composition of the road changes to blacktop asphalt some 10 or 12 miles from Columbia. It was shown that the gravel was thick and loose and raised 'between the ruts so that on occasions the bottom of the car was scraping the gravel. Plaintiff was driving at a speed of approximately 30 miles per hour when, at a point about 12 miles from Columbia and about a mile before leaving the graveled portion of the road, there was an unusually resounding blow, apparently caused by the impact of a large rock in the gravel mixture against some part of the automobile. Plaintiff commented at the time that the stone had probably dented a fender. The noise of the gravel striking the car and dragging on the underside thereof was of such intensity as to drown out other noises, and, according to the testimony, make conversation by the occupants of the car difficult, if not impossible.
Almost immediately upon reaching the blacktop portion of the road, having traveled some 30 to 50 yards thereon, plaintiff driver noticed a knocking in the engine. He immediately stopped, applied his emergency brake, and, leaving the motor running, stepped out of the car to make an examination as to the cause of the knock. Thinking the fan 'belt might have broken plaintiff lifted the hood of the car and, finding nothing wrong, continued his examination, in the course of which he found that the outlet plug assembly of the oil pan of the car had been completely torn loose, leaving a hole approximately one and one-half inches in diameter, through which the oil had drained out. Plaintiff immediately drove his car some 30 feet up the road to a position on the shoulder, out of the way of traffic, shut off his motor and proceeded to procure the services of a wrecker which towed the car into Columbia. The oil pan was welded, but, upon attempting to start the motor, it was discovered that the engine had burned out and was “frozen”. As a result it was necessary to install a new engine, the cost of which is the basis of plaintiff’s claim.
Concededly the only question involved in this case is stated in defendant’s brief as follows:
“Did the hazard insured against, namely collision, actually cause the subsequent damage to the motor in an unbroken or uninterrupted series of events over which the plaintiff had no control 3”
Counsel for defendant answers the question in the negative, and in support of such conclusion argues that the negligence of plaintiff driver in continuing to drive his automobile after being warned by the force of the collision, that is, the blow by the rock against some part of the vehicle, of the possibility of serious damage, was the proximate cause of the burning out of the motor.
We point out that the policy in effect was what is known as a $50 deductible contract. If the only damage was that which knocked the block assembly out of the oil pan, the cost of the repair would have been limited to approximately $12.
It is therefore to be observed that the force of defendant’s argument is to deny liability for the cost of replacing the motor on the ground that this damage resulted not from the original collision but from plaintiff’s intervening negligence.
We are not cited to any authorities which could be considered appropriate. The only case which is called to our attention is that of Haik v. United States Fidelity & Guaranty Co., 15 La.App. 97, 130 So. 118, which is cited by counsel for plaintiffs. Examination of this case reveals that the facts are not analogous to those here under consideration, and therefore the holding is inapplicable. Since we are unable to find any authority which bears upon the proposition above stated, we must resort to the enforcement of a rule of reason and common sense.
*663 Counsel for defendant points out a provision in the policy requiring the insured to protect the automobile against damage and denying liability on the part of the insurer for any further loss due to the insured’s failure so to protect the automobile. We think this point is comprehended in the issue which has been phrased by the above quotation from counsel’s brief, and the determination of that point carries with it the conclusion as to the secondary defense.
We are convinced that the plaintiff driver was not guilty of any act of negligence. It is true that the unusual force of the “collision” caused by the rock or stone striking the car was noticeable, but there is not the slightest intimation in any of the testimony that it was of such nature or character as to indicate any substantial damage. Dents in fenders, caused by flying gravel, are ordinary occurrences. We find no showing of any circumstance which was calculated to put the plaintiff driver on knowledge of any serious damage. According to the testimony, the car left the gravel road within approximately a mile of the “collision” which, at the speed noted, meant the lapse of approximately two minutes. Immediately upon an indication of engine trouble plaintiff made an examination, discovered the trouble, and took every necessary step in preventing further damage.
On trial plaintiff introduced the testimony of two automobile mechanics, each of more than thirty years experience. These witnesses testified that the oil from an automobile being driven 30 miles an hour would drain out of the 1% inch hole in the oil pan practically within a matter of seconds, that is, within not more than a minute. They further testified that the oil gauge would not indicate the loss of the oil until it was completely exhausted and that the temperature gauge would not show any abnormal indication until some little time later. Plaintiff driver testified that he observed these gauges, apparently through force of habit, and that neither indicated anything out of the way until after he had brought the car to a stop.
We have had no difficulty in reaching the conclusion that plaintiff exercised reasonable care and was entirely free from any negligence. In our opinion it would be unreasonable to expect drivers of automobiles on gravel roads to stop and make a thorough examination on every occasion when a dislodged piece of gravel struck some part of an automobile with a resounding thump.
It follows that our conclusion comprehends the finding that the collision was the direct, sole and proximate cause of the damage to the automobile motor and that defendant, under its policy, is liable for such damage.
The judgment appealed from is affirmed at appellant’s cost.