81 So.2d 132 (1955)
L. E. BARNARD, Plaintiff-Appellant,
v.
HOUSTON FIRE & CASUALTY INSURANCE COMPANY, Defendant-Appellee.
No. 8339.
Court of Appeal of Louisiana, Second Circuit.
June 20, 1955.
Rehearing Denied July 8, 1955.
Writ of Certiorari Denied October 4, 1955.
*133 Smallenberger, Eatman & Morgan, Shreveport, for appellant.
Blanchard, Goldstein, Walker & O'Quin, Wilton H. Williams, Jr., Shreveport, for appellee.
AYRES, Judge.
Plaintiff instituted this action, under the coverage afforded by the collision provisions of an automobile insurance policy, to recover of the defendant insurer $1,690 as the net value of a two and one-half ton Ford truck which he alleged was destroyed November 5, 1954, by workmen sawing or cutting a tree onto his truck.
From a judgment sustaining an exception of no cause or right of action, plaintiff appealed.
Plaintiff's contention is that his loss was sustained by a "collision" within the terms, intent and purpose of the insurance contract, whereas defendant's position is that the loss was caused by a "falling object", expressly excluded from the operation or *134 coverage of such provision. Defendant further contends that insurance against loss resulting from a "falling object" would have been afforded plaintiff under the "comprehensive" protection clause of the policy had he procured that coverage.
The question for determination by the court is whether the destruction of plaintiff's truck was caused by a collision, under the collision or upset features of the policy, or whether such damage was caused by a "falling object" and excluded by the effect of the language used in a statement under the "comprehensive" provisions.
The declaration of the contract, Item 3, recites:
"The insurance afforded is only with respect to such and so many of the following coverages as are indicated by special premium charge or charges. The limit of the company's liability against such coverage shall be as stated herein, subject to all the terms of the policy having reference thereto."
Thereafter, the various coverages afforded are listed and numbered from A to J, inclusive. Among those for which premiums were designated is "Coverage E-1, Collision or Upset." The coverage for which no premiums were designated and upon which defendant bases its contention and defense, is "Coverage D, Comprehensive." Under the title "Insuring Agreements", defendant's obligation, subject to the limits of liability, exclusions, conditions and other terms of the policy, is stated to be:
"Coverage E-1Collision or Upset
"To pay for direct and accidental loss of or damage to the automobile, hereinafter called loss, caused by collision of the automobile with another object or by upset of the automobile, but only for the amount of each such loss in excess of the deductible amount, if any, stated in the declarations as applicable hereto."
The provisions of the aforesaid insuring agreements, upon which defendant relies, read as follows:
"Coverage DComprehensive Loss of or Damage to the Automobile, Except by Collision or Upset.
"To pay for any direct and accidental loss of or damage to the automobile, hereinafter called loss, except loss caused by collision of the automobile with another object or by upset of the automobile or by collision of the automobile with a vehicle to which it is attached. Breakage of glass and loss covered by missiles, falling objects, fire, theft, explosion, earthquake, windstorm, hail, water, flood, vandalism, riot or civil commotion shall not be deemed loss caused by collision or upset."
The first matter for determination is whether or not the accident involved may be termed a "collision" within the aforesaid provisions of the insurance policy. In this connection, Blashfield's Cyclopedia of Automobile Law and Practice Vol. 6, Page 286, "Insurance", Sec. 3691, states:
"One common type of automobile insurance policy is that expressly covering damage to the insured car by reason of its being in accidental collision, during the life of the policy with any other automobile, vehicle, or object. The word `collision' in such a policy has its ordinary meaning of striking together or striking against. It includes the case of an automobile striking against another object, alike whether that object be standing or in motion, or regardless of whether both bodies are in motion, or one, no matter which, is stationary, and the other in motion.
"The insured automobile, therefore, if struck, while it is parked or stationary, by another vehicle, is damaged by `collision' with another vehicle or object within the meaning of a clause in the policy purporting either to cover or exclude loss or damage by collision."
In this connection, it was stated in Albritton v. Fireman's Fund Ins. Co., 224 La. 522, 70 So.2d 111, 112-113:

*135 "`Collision', which is generally defined as `the state of having collided', is a word of broad import. The verb `collide' means `to clash'; `to strike or dash against each other'; `to come violently into contact'; `encounter with a shock'. See Webster's New International Dictionary, 2nd Ed., Unabridged and The New Century Dictionary, Vol. I. Thus, the noun `collision', according to lexicographers, is `striking together' or `striking against' and, in construing insurance policies of this sort, many of the courts have applied this definition. See 5 Am.Jur. Verbo `Automobiles', Sec. 555; Annotation in 23 A.L.R.2d 393-426 at page 397 and Blashfield, Cyclopedia of Automobile Law and Practice, Vol. VI, Sec. 3691.
"Hence, it would ordinarily seem to follow that, in policies which insure against collision with other objects without any limitation as to their kind or character, coverage would be provided for any loss incurred by the automobile coming in contact with anything which could be described as an object, irrespective of whether it was a moving or stationary force. Haik v. United States Fidelity & Guaranty Co., 15 La. App. 97, 130 So. 118."
Although there are decisions to the contrary, there is authority for the view that the striking of an insured automobile by an object which falls on it from above may constitute a collision within the coverage of a policy insuring against loss or damage caused by collision, so states 45 C.J.S., Insurance, § 797(5), p. 840. In the Illinois case of Teitelbaum v. St. Louis Fire & Marine Ins. Co., 296 Ill.App. 327, 15 N.E.2d 1013, the facts and the issue to be determined were stated by the court:
"The automobile was parked in a vacant lot adjacent to a building, and the injury and damage to it was caused when a person either jumped or fell from the third story of this building and landed on the automobile. It is agreed that under the terms of the policy upon which the action is predicated, plaintiff is not entitled to recover if the `loss was caused by collision with any other object'. The only controversy between the parties then is whether or not the damage was caused `by collision with another object'. If the incident can be said to have been a collision, plaintiff cannot recover. If it was not a collision, he can recover."
After citing Freiberger v. Globe Indemnity Co., 205 App.Div. 116, 199 N.Y.S. 310, where it was held that damage to an automobile from the fall of an elevator, on which it was being lowered, was covered by a policy indemnifying for damage to an automobile caused solely by actual collision with another object, either moving or stationary, for "collision" means strictly the impact of objects, visible, tangible, concrete and real entities, through any one of such objects moving against the other, and after citing National Fire Ins. Co. of Hartford, Conn. v. Elliott, 8 Cir., 7 F.2d 522, 42 A.L.R. 1121, wherein it was held that where a fire and transportation automobile policy insured against perils of collision of the conveyance used to transport an automobile, and that when the automobile was being lowered from the second floor of a storage room to the ground floor, by elevator, and the elevator dropped and struck the bottom of the shaft, and the automobile was bent, broken and twisted, there was a "collision" of the elevator with the bottom of the shaft, within the meaning of the policy, the Illinois court concluded:
"We are of the opinion that the injury to plaintiff's automobile was caused by a collision as that term is defined, and that under the terms of the policy sued on, plaintiff cannot recover."
We are likewise of the opinion that the striking of the automobile by the tree as it was sawed or cut by the workman and as it fell to the ground, constitutes a collision from which plaintiff, according to his allegations, has sustained "direct and accidental loss." We have reached this conclusion notwithstanding the holding of this court in Chandler v. Aetna Ins. Co., La. *136 App., 188 So. 506, 508. The cases are distinguishable in that in the Chandler case no accident in reality was involved. There a tornado visited the town of Rodessa, which, among other damage done, demolished a dwelling, from which portions or fragments struck and collided with plaintiff's automobile with such force as to cause serious damage. In the course of the opinion, this court stated:
"Plaintiff contends that the probable or efficient cause of the damage to the car was the collision of the dwelling or parts of it with the car. Defendant contends that the efficient cause was the tornado. We do not think any determination need be made as between the two forces. It is certain no human agency contributed to the damage and it is clear that the action of the dwelling or parts of it in colliding with the car was in immediate sequence with the primal force, the tornado, and its action in colliding with the car was brought about solely by that instrument of nature. Some part of the dwelling came in contact with the car but it would be unreasonable to say that the parties, in making the contract, contemplated that the coverage of `collision' would include a house being blown against the car by a tornado. Manifestly, the tornado itself was not an accident but was an act of God. An act of God is something in which man plays no part, does not understand and in most instances is afraid to attempt to fathom."
The cases cited from other jurisdictions in support of defendant's contention were also cases where the damages done were due to windstorms, tornadoes, and other circumstances which with the same exactness might be designated acts of God. The cases referred to are Mercury Ins. Co. v. McClellan, 1950, 216 Ark. 410, 225 S.W.2d 931, 14 A.L.R.2d 806, involving windstorm damage where an automobile was blown into a tree; United States Insurance Co. of Waco v. Boyer, Tex.1954, 269 S.W.2d 340, involving windstorm damage when a tornado demolished a building, the fall of which crushed an automobile; Ohio Hardware Mut. Ins. Co. v. Sparks, 1938, 57 Ga.App. 830, 196 S.E. 915, wherein during a windstorm a pole was blown against an insured automobile; Saul v. Saint Paul-Mercury Indemnity Co., 1952, 173 Kan. 679, 250 P.2d 819, damage was caused by a flood wherein a motor vehicle was washed away and into a hole; and Atlas Assur. Co. v. Lies, 1943, 70 Ga.App. 162, 27 S.E.2d 791, also a windstorm damage case where a tree was blown across an automobile.
It is urged, in effect, that the collision caused by the falling tree is excluded from the general collision coverage by the language of the comprehensive clause heretofore quoted. A determination of this question requires an interpretation and construction of the several provisions of the policy. The general rules for such an interpretation are stated in Albritton v. Fireman's Fund Insurance Company, supra, as follows [224 La. 522, 70 So.2d 113]:
"An insurance policy is a contract under the law and the rules established by our LSA-Civil Code for the interpretation of agreements are applicable. See Article 1945 et seq. Accordingly, if the words of the policy are clear and express the intent of the parties, the agreement is to be enforced as written. LSA-Civil Code Articles 1901 and 1945. But, if there is any ambiguity or doubt, the court must endeavor to ascertain the common intention of the parties by reference to other phrases or words of the agreement or by other similar contracts of the parties, Articles 1948, 1949 and 1950, LSA-Civil Code, bearing in mind that, if a clause or word is susceptible of more than one interpretation, it is to be understood in the sense that would make the obligation effective, Article 1951, LSA-Civil Code, and, additionally that doubtful language is to be construed against him who has contracted the obligation. Article 1957, LSA-Civil Code. Our law, therefore, conformable with the universal rule applicable to contracts of insurance, is that all ambiguities must be construed in favor of the insured and *137 against the insurer. See Muse v. Metropolitan Life Ins. Co. Co., 193 La. 605, 192 So. 72, 125 A.L.R. 1075; Hemel v. State Farm Mut. Auto Ins. Co., 211 La. 95, 29 So.2d 483; Stanley v. Cryer Drilling Co., 213 La. 980, 36 So.2d 9 and Oil Well Supply Co. v. New York Life Ins. Co., 214 La. 772, 38 So.2d 777."
In the first place, "Coverage D" relative to comprehensive loss or damage constitutes no effective part of the insurance contract between plaintiff and defendant. Plaintiff's rights are governed by the provisions of clause "Coverage E-1" pertaining to collision or upset. There is no provision there for excluding damage or loss caused by "falling objects." Statement of defendant's liability under this coverage, which is otherwise clear, is not affected by apparently contradictory expressions under other, and distinct, clauses of the policy and which in reality constitute no part of the contract. If given any effect whatever, they would only tend to obscure and confuse and cast doubt upon terms of the contract which are otherwise definite.
That the limitations asserted in the "comprehensive" provisions are of doubtful and obscure meaning finds support in that portion of the policy labeled "Exclusions" where no reference is made as to damage or loss caused by "falling objects". However, there is an expression therein deserving of notice, although not involving an item of loss or damage claimed in this action, which is the exclusion pertaining to the breakage of glass, which reads as follows:
"This policy does not apply: * * * (n) under coverages E-1 and E-2 to breakage of glass if insurance with respect to such breakage is otherwise afforded."
Coverage E-1, noted hereinabove, covers loss or damage due to collision and upset. The provisions in the "Comprehensive" coverage that breakage of glass "shall not be deemed loss caused by collision or upset" is contradicted by the aforesaid clause (n), which stipulates that breakage of glass is not excluded from the collision features of the policy when "insurance with respect to such coverage is not otherwise afforded." Therefore, can it be said it appears clearly, definitely and positively that loss or damage caused by a collision through the cutting of a tree onto plaintiff's truck has been eliminated or excluded from coverage by the policy? We think not. The language relied upon for such an exclusion is obscure, indefinite and ambiguous.
As a further illustration of the doubtful meaning of the terms of the policy, we look to "Coverage I", designated as "Combined Additional Coverage", a coverage provided in plaintiff's policy, reading as follows:
"To pay for direct and accidental loss of or damage to the automobile hereinafter called loss caused by windstorm, hail, earthquake, explosion, riot or civil commotion, or the forced landing or falling of any aircraft or of its parts or equipment, flood or rising waters, external discharge or leakage of water, except loss resulting from rain, snow or sleet."
If the damage or loss from falling objects any falling object, as the term is general and non-exclusiveis comprehended in the comprehensive "Coverage D" as contended for by defendant, why the necessity for singling out a specified few "falling objects" such as aircraft or any of its parts or equipment under "Coverage I"? No specific exclusion is provided for these particular objects from the term "falling objects" as contained in the "comprehensive" provisions.
Should the interpretation contended for by defendant be followed there would not only be a duplication of coverage as to certain specific items or causes of loss or damage but also a duplication of premium charges therefor. Such construction was evidently not the intention of the parties. While the language of Coverage E-1 is a clear, positive and unambiguous statement of defendant's liability or obligation to plaintiff for the loss and/or damage to his motor vehicle due to collisionsany or all collisionsthe statements in the policy relied *138 upon by defendant as relieving it from liability where the damage is done by "falling objects" are so confusing, obscure, indefinite and ambiguous as to justify, in our opinion, invoking the rule of resolving the interpretation of the terms of the policy against the insurer and in the insured's favor.
Defendant avers that it was not the intention of the parties that the policy provide protection under the collision features thereof against damage caused by a falling tree. That neither party anticipated that a tree might fall on the vehicle is not sufficient to exclude that form or manner of an accidental collision from the operation and protection of the policy. It is sufficient for the purpose that no positive and definite exclusion was provided in the event of such an accident. Neither would the fact that under other provisions of the policy plaintiff could have also obtained protection against loss and damage through the happening of the accident involved relieve the insurer when the coverage and protection, he did obtain, protect him against the loss sustained. Therefore, further consideration of the question of whether plaintiff, had he elected to take Coverage D, designated as "Comprehensive Loss of or Damage to the Automobile, except by Collision or Upset", would have been protected against the loss herein sustained under such other provisions would be superfluous. It is sufficient that the coverage afforded under the collision and upset provisions of the policy protected him against the loss sustained in this particular accident, and in concluding that it did, it is obvious, in our opinion, plaintiff's petition states a right and a cause of action, and, accordingly, that the exception should have been overruled.
The judgment appealed is therefore annulled, reversed and set aside and the exception of no cause or right of action is overruled and the case remanded to the Honorable The Twenty-Sixth Judicial District Court in and for Webster Parish, Louisiana, for further proceedings. The appellee is taxed with the costs of this appeal.
Reversed.