hGASKINS, Judge.
The plaintiff, Vernon Sawyer d/b/a Vernon Sawyer Farms, appeals from a trial court judgment rejecting his claim for payment of insurance proceeds from the defendant, Shel-tér Mutual Insurance Company (Shelter),[1] for damage to an irrigation system on his farm. For the following reasons, we affirm the trial court judgment.
FACTS
The irrigation system on the plaintiff’s Morehouse Parish farm had a center post with an arm extending outward approximately}! mile. The arm had wheels that allowed it to travel around the center post, irrigating the field in a circular pattern. The plaintiff had previously planted cotton in the field, but in 1995, he planted corn, which required higher and stiffer rows. In late May or early June 1995, the plaintiff turned on the irrigation system for the first time that season and set it to run overnight. When he returned the next morning, he discovered that the system was damaged and was not functioning. One of the wheels could not roll over a high corn row, causing the arm to bend in a V-shape and to cease functioning.
The plaintiff had a contract of insurance with Shelter, covering the farm and specifically including the irrigation equipment. The plaintiff obtained an estimate of $5,998.96 to repair the system and made a claim upon Shelter for payment for the repairs. The insurance company refused to pay the claim, arguing that the irrigation system was not covered by the overturn and collision clause of the policy which provides as follows:
We will pay for loss or damage to farm personal property while in or on a vehicle or vehicles covered under this policy as a result of the overturn of the vehicle or collision with another object or upset of carrying conveyance.
|2The term “collision” is not defined in the policy. Shelter argued that the irrigation system did not suffer a collision or upset, but was damaged when the wheel could not negotiate the row and began spinning and slipping. Therefore, the defendant contended that the damage was not covered by the policy.
The plaintiff filed suit against Shelter on July 12, 1995. A bench trial on the matter was held on January 30, 1997. The parties do not dispute that the collision or upset clause of the insurance contract is the applicable provision in this case. The plaintiff argued at trial that when the wheel of the system came into contact with the corn row, that constituted a “collision” within the terms of the policy.
The defendant maintained that the wheel encountered the corn row and began to slip or spin, and could not get over the row, causing the damage. According to the defendant, this problem was exacerbated by the muddy condition created by the irrigation water. The defendant contended that if the plaintiff had operated the system without water first, the wheels would have made a track on which to run when the water was turned on and the system would have been able to roll over the corn row.
In reasons for judgment, the trial court stated that it examined the photographs of the damaged system which were taken within a few weeks of the time the damage occurred. Under the terms of the policy, the court found that the plaintiff was covered for a collision, even at a low speed, but found that no collision occurred in this case. The court found that the wheel started spinning and could not get over the row and the damage was caused by slippage and not by a collision. A judgment was signed on February 10, 1997 rejecting the plaintiff’s claims. *31 The plaintiff devolutively appealed the trial court judgment.
J3COLLISION
The plaintiff argues that the trial court erred in finding that the damage to his irrigation system did not fall within the meaning of “overturn, upset or collision” which the policy insures against. The plaintiff notes that the insurance policy does not define “upset” or “collision,” cites various provision of the Louisiana Civil Code on contract interpretation and then argues that because the definitions of “upset” and “collision” are ambiguous, they must be construed against the insurer who drafted the contract. These arguments are without merit.

Legal Principles

An insurance policy is a contract between the parties and should be construed using general rules of interpretation of contracts set forth in the Louisiana Civil Code. Valentine v. Bonneville Insurance Company, 96-1382 (La.1997), 691 So.2d 665; Collinsworth v. Foster, 28,671 (La.App.2d Cir. 9/25/96), 680 So.2d 1275. If the wording of the policy at issue is clear and expresses the intent of the parties, the agreement must be enforced as written. Valentine v. Bonneville Insurance Company, supra. The parties’ intent, as reflected by the words of the policy, determines the extent of coverage and such intent is to be determined in accordance with the general, ordinary, plain, and popular meaning of the words used in the policy, unless the words have acquired technical meaning. Valentine v. Bonneville Insurance Company, supra. An insurance policy should not be interpreted in an unreasonable or strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms so as to achieve absurd conclusions. Valentine v. Bonneville Insurance Company, supra; Collinsworth v. Foster, supra. If ambiguity still remains after applying other general rules of construction, ambiguous provisions are to be | construed against the insurer and in favor of the insured. Valentine v. Bonneville Insurance Company, supra; Collinsworth v. Foster, supra.
The plaintiff does not really contend that the system overturned or was upset and there is nothing in the record to indicate that any piece of the machine fell onto the ground. The issue is whether the plaintiff is correct in arguing that a wheel of the system “collided” with the row, resulting in damage to the machine. The definition of the term “collision” appears to be construed most often in the context of automobile insurance policies. In Albritton v. Fireman’s Fund Insurance Company, 224 La. 522, 70 So.2d 111 (1953), the Louisiana Supreme Court considered whether a collision occurred within the terms of an automobile insurance policy where the rear wheels of a dump truck came loose and the chassis of the vehicle struck the pavement. The court set forth several definitions of the word “collision” as follows:
‘Collision’ which is generally defined as ‘ the state of having collided’ is a word of broad import; ‘to strike or dash against , each other’; ‘to come violently into contact’; ‘encounter with a shock’. See Webster’s New International Dictionary, 2nd Ed., Unabridged and The New Century Dictionary, Vol. I. Thus the noun ‘collision’, according to lexicographers, is ‘striking together’ or ‘striking against’ and, in construing insurance policies of this sort, many of the courts have applied this definition.
The court found that the definition of the word “collision” was broad enough to encompass a sudden and violent striking of the rear portion of the vehicle with the pavement and found that the damage was covered by the insurance policy.
Similarly, in Manard Molasses Company v. Sun Insurance Office, Limited, 170 So.2d 691 (La.App. 4th Cir.1965), that court opined that “collision” or “upset” is generally held to include any occurrence resulting in a violent meeting of any object, whether mobile or immobile, that causes a meeting or contact with the insured vehicle, except those occurrences considered to be acts of God, such as hail, tornado, debris activated by hurricanes and similar acts over which man |ghas no control. In Manaré, the fourth circuit was called upon to decide whether a collision *32 occurred when a molasses truck loading syrup onto a ship was pulled down an embankment and into the ship when the vessel moved. The court found that under those circumstances, a collision had occurred and the damage to the truck was covered under the terms of the insurance policy.
In Haik v. United States Fidelity and Guaranty Company, 15 La.App. 97, 130 So. 118 (1st Cir.1930), the first circuit found coverage under the terms of an insurance policy, reasoning that a collision had occurred when a vehicle fell into a hole that had been partially filled with bricks and other debris. The insurance policy covered a collision between the vehicle and another object. While considering the meaning of the word “collision,” the opinion was more concerned with the definition of “another object.” Specifically, the inquiry was whether the object must be moving or whether it could be stationary, such as the bricks and debris at the bottom of the hole. The court reasoned that, technically speaking, a collision or impact would mean the striking against each other of two bodies in motion. However, part of the clause of the policy refers to the collision with another object and therefore, such a provision in an insurance policy, in the absence of more specific language, cannot be restricted to a collision with a moving object.
In Barnard v. Houston Fire and Casualty Company, 81 So.2d 132 (La.App. 2d Cir. 1955), this court found that a collision occurred when a tree was cut down and accidentally fell onto a vehicle. The decision was based upon the definition of collision set forth in Albritton, supra.
However, in Brown v. Union Indemnity Company, 159 La. 641, 105 So. 918 (1925), the Louisiana Supreme Court considered the issue of whether recovery could be allowed under a policy insuring against loss caused by accidental collision with |6another object where the insured’s automobile was damaged by tipping over and coming in violent contact with the roadway. The court- found that the insurance company was not liable because the so-called collision alleged by the plaintiff was the contact of the vehicle with the roadway caused by the upsetting or tipping over of the car. The court reasoned that the car is always in contact with the roadway and the tipping over simply transferred the point of contact. Therefore, recovery was denied.
In Chandler v. Aetna Insurance Company, 188 So. 506 (La.App. 2d Cir.1939), this court found that there was no collision within the terms of an insurance policy when a tornado blew debris from a house into the insured’s car. We reasoned that “collision” as defined by lexicographers might be strained to include any impact of one body with another, but the word in an insurance policy must be construed in accordance with what the parties to the contract must reasonably be said to have contemplated as to the coverage. This court found that the damage was not reasonably in contemplation of the contract because it was caused by a force of nature and it would be unreasonable to say that the parties, in making the contract, contemplated that the coverage of “collision” would include a house being blown against a car by a tornado. The court further found that the damage in question was not reasonably in contemplation of the contract because coverage against tornado damage was offered to the plaintiff and was rejected.
In Puckett v. Carolina Casualty Insurance Company, 408 So.2d 23 (La.App. 3d Cir. 1981), the plaintiff contended that when his driver negotiated a dip in the road, the right side of the trailer split, spilling the rice into the roadway. This case concerned whether there was an “upset” within the terms of the insurance contract. The court found that there was no upset, but that the normal 17wear and tear or rusting had weakened the structural integrity of the vehicle. Because there was no upset, no recovery was allowed.

Discussion

The plaintiff has cited numerous cases from other jurisdictions construing the term “collision.” However, those cases are not factually similar to the present case. As discussed above, the jurisprudence in this state has construed the definition of “collision” as involving a violent contact with an object, whether moving or stationary, such as the striking together or striking against. In the present ease, there was no violent contact or striking together or against of any part of *33 the irrigation system with the com row or any other object.
At trial, the plaintiff stated that the damage to the irrigation system was caused by the wheel trying to climb up on the row in its sweeping motion and it could not get over the row. The plaintiff stated that the damage was caused by the strain. The plaintiff also stated that the wheel got caught in the furrow between two rows and that he knew the wheel tried to get over the top of the row because the wheel had been spinning.
Mr. Jessie Fallon, of Scott Irrigation, testified that the damage was caused by the wheel trying to get over a high com row and “with the system watering, you have a high corn row and it’s a very slick bank and the wheel tries to go up it and it just keeps slipping back down into the row and it just keeps bunching the span and staying in that row until it just literally causes a pipe to fail.”
The record supports the trial court finding that the damage was caused not by a collision, overturn or upset. The damage resulted when the wheel could not negotiate the row and began slipping and spinning in the mud. The wheel came into contact with the row, not in a collision, but in the manner in which it was designed. The damage occurred not because of a collision, i.e., a striking |8together, striking against or a violent meeting of two objects. The damage was caused by strain on the system when the wheel was unable to cross the corn row. Therefore, the trial court was correct in rejecting the plaintiffs claim and entering judgment in favor of the defendant, Shelter Mutual Insurance Company.
CONCLUSION
For the reasons stated above, we affirm the trial court judgment in favor of the defendant, Shelter Mutual Insurance Company, rejecting the demands of the plaintiff, Vernon Sawyer d/b/a/ Vernon Sawyer Farms. All costs in this court and in the court below are assessed to the plaintiff.
AFFIRMED.

. The plaintiff's petition names as defendant Shelter Insurance Companies. Shelter Mutual Insurance Company answered the petition.