ALANSON M. ALBRO *et al. vs.* ARTHUR RAYMOND MATTESON *et al.*

MAY 10, 1940.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CONDON, J. This bill in equity was brought by the complainants to enjoin respondents from continued trespassing

upon complainants' land in the town of Coventry. The cause was heard in the superior court on bill, answer and proof and resulted in a decision for the complainants. On this decision a final decree was entered specifically enjoining each respondent as prayed for in the bill of complainant. From this decree respondents appealed to this court.

The complainants alleged in their bill that they were the owners of certain lots of land located in the town of Coventry and particularly described as lots numbered 1, 2, 3, 4, 5, 6, 7 and 8 on a plan known as Mishnock Swamp Plat, which plat is recorded in the records of land evidence in said town. They also alleged that respondents Arthur Raymond Matteson, Susie J. Matteson and Nettie C. Northup owned land adjacent to their land; that respondent Arthur Raymond Matteson, through his servants or agents, the respondents Clifton Barber and Elmer Tarbox, had continuously, for a long period of time, entered upon complainants' land and had, without the consent and against the express direction of the complainants, cut therefrom a great quantity of standing trees, timber, wood and underwood; and that respondents were then engaged in cutting and carrying away such trees, timber and wood, and that they threatened to continue so doing.

The respondents admitted in their answer that they had cut and carried away trees, timber and wood but averred that they had cut such trees, timber, wood and underwood only from their own land, and that they had not trespassed, as alleged, on the land of the complainants.

In proof of their allegations, complainants introduced evidence of the cutting on what they claimed were their lots 7 and 8, and also evidence of another cutting on what they claimed were their lots 1 and 2. Respondents, in their turn, introduced evidence that the first-mentioned

cutting was wholly on lot 9 belonging to respondents Arthur Raymond Matteson and Susie J. Matteson, and the second-mentioned cutting was on land of the respondent Nettie C. Northup. This evidence consisted of deeds and plats of the land, which were admitted as exhibits; of the testimony of witnesses as to the existence and location of certain bound stones; as to former cuttings made many years ago at the same spots as the present cuttings; and as to the location of certain landmarks and also of a road which bounded the plat on the east.

The evidence for the complainants rested very largely upon the correctness of a survey of the land in question made by a qualified engineer, who obtained the bases for his survey from a copy of the original plat which was on record in the office of the town clerk in Coventry. This original plat was drawn from a survey of the land made in 1736. The evidence for the respondents rested mainly on the recollection of old residents, who were familiar with the land and had cut timber from it many years ago, as to whether certain stones found in the woods were bound stones marking the boundaries of the land shown on the original plat and as to where the lands of the complainants ended, with respect to the existing cuttings of the timber. On this evidence, as the trial justice observed, "The title and boundaries of the land upon which the cutting was being done are in serious dispute."

The trial justice took a view to enable him to better understand the testimony of the witnesses as to the boundaries on the easterly and southerly sides of the original plat, which were chiefly in dispute, and came to the conclusion "that a fair preponderance of the evidence shows that the timber was cut on lots 7, 8 . . . and on lots 1 and 2" belonging to complainants.

We have carefully read the transcript and have examined all the exhibits, and we are of the opinion that

there is a clear conflict in the evidence on the fundamental question at issue, namely, whether the admitted cuttings of timber were committed on the lands of the complainants. Consequently, the contention of the respondents, that we are in as good a position as the trial court to draw inferences from undisputed evidence, is inapplicable here.

Unless the findings of the trial justice on conflicting evidence in an equity cause are clearly wrong, it is the long and well-established rule in this court that they will not be set aside. *Gilbert* v. *Marquis,* 61 R. I. 302. In the instant cause we find nothing in the testimony of the witnesses or in the exhibits which would justify us in reaching such a conclusion. The trial justice saw and heard the witnesses testify and, in addition, he took a view of the premises. In this connection he had a distinct advantage over us in coming to a correct conclusion concerning the conflicting, and, at times, confusing testimony of some of the witnesses regarding the easterly and southerly boundaries of the premises and the location of the timber cuttings complained of.

The trial justice also had the advantage of knowing, when a witness was being examined with reference to points and distances on some particular plat, just what plat was being discussed, and to what the witness was referring in his answers. In many instances this advantage was denied us, by reason of the failure of the record to reveal what points on what plat were being indicated by the witness in his testimony. Under such circumstances, the respondents' burden of convincing this court that the trial justice's decision was clearly wrong was made more difficult than would ordinarily be the case. In any event, the record here does not warrant us in finding that the trial justice was clearly wrong. On the contrary, we are of the opinion that the evidence establishes substantially that the respondents were trespassers on complainants' land.

The appeal of the respondents is, therefore, denied, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*George Roche,* for complainants.

*Flynn and Leighton, James W. A. Leighton,* for respondents.