JOHN W. LYNCH *vs.* ARTHUR M. AGUIAR.

APRIL 30, 1954.

PRESENT: Flynn, C. J., Baker, Condon and O'Connell, JJ.

CONDON, J. This action of trespass on the case for negligence is here on the plaintiff's bill of exceptions containing numerous exceptions to rulings during the trial in the superior court including an exception to the denial of his motion for a new trial after the jury had returned a verdict for the defendant.

The plaintiff's cause of action arose out of a collision between defendant's automobile and a tractor-trailer truck on route 40 near Elkton, Maryland, November 23, 1950, about 6 a.m. As a result of the collision plaintiff, who was riding on the front seat of the automobile as a passenger for hire was injured. He claimed that the proximate cause of the accident was the negligence of defendant, who was driving the automobile, and of the driver of the truck. The plaintiff entered into a partial settlement with the owner of the truck under the joint tort feasors act, public laws 1940, chapter 940, and thereafter brought the instant action against defendant.

In the trial of the case it was stipulated that although the accident happened in Maryland the rights and duties of the parties were to be determined by the law of this state. Under our statute regulating the operation of motor vehicles on the public highways it is provided that during the nighttime the maximum speed permitted is 45 miles per

hour and headlights are required to be lighted. And it is also provided therein that for the purpose of such rules nighttime shall be deemed to be one-half hour after sunset to one-half hour before sunrise.

The evidence shows that in the vicinity of Elkton on November 23, 1950 the sun rose at 6:52 a.m. It also shows that when the collision occurred the defendant's automobile headlights were not on and that he was driving at a speed in excess of 45 miles per hour. While those infractions of the rules of the road are not negligence *per se* they are prima facie evidence of negligence and must be weighed with other evidence tending to prove the cause of the collision.

It appears from the transcript that just before the collision defendant was proceeding in a northerly direction along route 40 at about 50 miles per hour. Route 40 is a four-lane highway divided by a center strip 39 feet wide into two lanes for northerly and two lanes for southerly traffic. At the scene of the accident the highway is straight and level for a considerable distance and is intersected by a dirt road on the east. Opposite this road is a crossover or opening in the center strip permitting traffic to cross from one side of the highway to the other. As defendant approached this point the tractor-trailer had come through the opening and was moving across the northerly lanes with its tractor turned toward the north. While in that position it was struck by the automobile at a point just in front of the trailer's right rear wheels.

The defendant apparently tried to avoid the collision solely by applying his brakes. He claimed it was not possible for him to turn either to the right or to the left without endangering his passengers. The plaintiff, who had been dozing at the time, testified that he was awakened by the "squealing of tires" and by hearing a fellow passenger Thomas Tucci, who was on the front seat with him, holler "Look out," and that he "looked up and saw a red trailer-tractor in front of us" about 100 feet away or better, directly

across the two northerly lanes. He testified further that the front part of the automobile hit the rear right side of the trailer a "Very, very sharp" blow; that he was thrown forward; that the right side of his face was struck by the post between the windshield and the door; and that his hands and face were cut. He could not estimate the speed of the automobile but said it was going "pretty fast" when it hit the trailer.

The persons who were in the best position to testify as to how the collision occurred were defendant, the driver of the tractor-trailer, and Thomas Tucci, who was sitting next to defendant. Neither Tucci nor the truck driver testified. The defendant testified that on November 23, 1950, about 6 p.m., he left Camp Lejeune, North Carolina, and thereafter, except for three or four hours when Tucci relieved him, he drove through the night until the accident happened the following morning, and that just before his automobile collided with the tractor-trailer he was traveling at a speed of about 50 miles per hour.

He described the collision in this manner: "I saw this trailer coming south to make a turn. Naturally I thought, as anybody else would have thought, I suppose, that it was going to make a complete stop and give me the right of way. I had the right of way. He proceeds to make that turn. It wasn't going into a side road or any place else. The cab was turning north. The trailer was across in front of me and I struck it in the front of the rear right wheels."

To properly evaluate that description, it is necessary to consider certain other testimony which he gave a little later. For example, he testified that *when he first saw the tractor-trailer* it "was traveling south to approach the spot in the road where you make the turn." But just before that he was asked: "When you first saw the tractor-trailer, you say it was proceeding what direction?" and he answered: "He was making a turn to go north. The cab was pointed in that direction."

In attempting to clear up this matter and precisely fix the position of the tractor-trailer when he first saw it, his counsel directed his attention to plaintiff's exhibit 4, which was a police report containing a diagram of the collision that purported to locate the truck at the moment defendant's automobile collided with it. Such explanation is as follows: "Q. I ask you if that is a fair representation of the placing of the truck? A. No. Q. Could you explain to the jury where that truck was? A. The truck was coming down here making the turn. The cab was not here. The cab was here, facing north. The body of the truck was slightly on an angle, not exactly straight; a very slight angle. The cab was definitely turned. There was no road there at all. Q. The representation of a dirt road on that diagram is not correct? A. That's true. Q. What does exist in that general area? A. Here in this area, as I recall it, the gas station was not here. The diner was here. No curbing here. No road. It feathers out to the highway, the dirt. The diner is here."

That testimony did nothing to clarify defendant's prior testimony. It must be obvious that the witness' references to the exhibit, without any identification on the record as to what he is referring, are unintelligible, at least as far as this court is concerned. On two former occasions we have commented on the worthless nature of such testimony on review in this court. See *Albro* v. *Matteson*, 64 R. I. 494, 497, and *Round* v. *Burns*, 77 R. I. 135, 141.

In justification of the manner in which he operated his automobile when it became evident to him that he could not avoid striking the truck, defendant testified: "When I saw that the truck was not going to stop I applied my brakes. It was too late. I couldn't make the turn. If I did, I would probably have endangered the lives of others. I didn't think of myself. I thought of stopping the car the best I could. I couldn't make the turn right because there was no road. I couldn't turn left, there wasn't enough

room." He testified further: "I went straight into the side of the truck. That is all I could do."

In view of the above testimony, it was important to know at least approximately the distance separating the two vehicles when defendant first observed that the tractor-trailer was going to cross over to the northerly lanes. The defendant was the only witness who could reasonably be expected to testify on this point with some definiteness. However, his testimony did not prove to be helpful, as the following excerpts from the transcript will show: "Q. How far away were you from the tractor-trailer when you first observed it? A. I don't recall. * * * Q. How far away from it were you then? A. I don't recall. * * * Q. Is that the first time you observed him? A. Yes. Q. At that time how far away were you from the crossover? A. I don't recall."

As to the force of the impact of the automobile against the truck, defendant would have us believe it was light, and that the automobile was coming to a stop. But his own witness Edwin Furtado, who was one of those riding in the right rear seat, testified on that point as follows: "Q. Can you tell us the kind of impact it was? Was it hard or light? A. It was hard. Q. It was a real smash, wasn't it? A. That's right." He further testified that he was riding in the right rear seat directly behind plaintiff and that the rear door on his side broke loose and came down on him. This testimony contradicts defendant and substantially corroborates plaintiff, who had testified that it was a very sharp blow and that the automobile was wrecked.

After carefully considering all the evidence, we are of the opinion that it clearly preponderates against the verdict. In reaching this conclusion we have kept in mind among other things that plaintiff as a passenger for hire had nothing to do with the operation of defendant's automobile. As such a passenger he could not be charged with contributory negligence unless he failed to give warning of a threatened

danger unobserved by the operator but known to him, the plaintiff. *Hermann* v. *Rhode Island Co.,* 36 R. I. 447.

There is no evidence of such knowledge in the record. Nor is there any other evidence upon which the jury could reasonably base a finding that plaintiff was not in the exercise of the due care required of him as a passenger. For these reasons the trial justice's denial of plaintiff's motion for a new trial was clearly wrong. Since the exception to such denial must be sustained and a new trial ordered, it is unnecessary to consider any of the plaintiff's other exceptions.

The plaintiff's exception to the denial of his motion for a new trial is sustained, and the case is remitted to the superior court for a new trial.

*Adler & Zucker, Martin M. Zucker,* for plaintiff.

*Higgins, Kingsley & Williamson, Donald A. Kingsley,* for defendant.