**STATE of Missouri ex rel. STATE HIGH-WAY COMMISSION of Missouri, Relator-Appellant,**

v.

**Eugene HILL and Julia Alice Hill, Respondents.**

**No. 8195.**

Springfield Court of Appeals, Missouri.

Dec. 23, 1963.

Robert L. Hyder, Bruce A. Ring, Jefferson City, for relator-appellant.

Richard M. Webster, Carthage, Moore, Pettit & Steinle, J. Hal Moore, Aurora, for respondents.

HOGAN, Judge.

This is a condemnation case. It involves the acquisition of part of the condemnees' farm as right-of-way for a limited access highway. A jury, by unanimous verdict, has awarded the sum of $9,300 as damages. The State Highway Commission has appealed. For convenience, we shall refer to the Commission as the relator and to the condemnees as the defendants.

The defendants' farm is a 77-acre tract located about four and one-half miles west of Sarcoxie, Missouri. The defendants have lived on this farm for about eighteen years, and the evidence indicates they have substantially improved its condition during that time. There is a two-bedroom frame house on the farm equipped with modern heating and plumbing facilities, and the outbuildings are in good condition. About half the land is cultivated but the farm is operated primarily as a dairy farm. At trial time the defendants maintained a dairy herd of eighteen milch cows and ten head of "replacement stock," and marketed the milk locally.

In order to understand the parties' contentions and the defendants' claim for damages, it is necessary to describe the tract of land involved, at least roughly. The farm consists of two (approximately) 40-acre tracts running north and south, and might be described as the West Half of the Southeast Quarter. For purposes of exposition, we may regard the tract as half a quarter section with the 1320-foot boundary running east and west and the half-mile boundary running north and south. The testimony, as we understand it, relates principally to the south half of the farm. The improvements on the farm—the house and outbuildings—lie in the southwest corner of the tract, between 450 feet and 650 feet north, and some 50 feet to 100 feet east of the southwest corner of the tract. Access to these improvements, and indeed the only access to the farm so far as the record shows, is gained by a road which is simply described as a "county road." This appears to be an improved gravel road, approximately 35 feet wide. Beginning at the southwest corner of the defendants' land, this road runs some 750 feet north along the west side of the defendants' farm, where it ends, forming a cul-de-sac or "dead-end." About one-half mile south of the defendants' property line, this county road intersects a paved highway. The county road is used by the defendants to travel to Sarcoxie for supplies, their milk is picked up by a carrier which travels this road to their house, and their children ride to school on a bus which also uses this county road. Their mailbox is located at the intersection of the county road and the paved highway. In short, it was the defendants' position that this road was their link with, or access to, the outside world.

The relator has condemned a strip of ground some 123 feet wide off the entire south side of the defendants' property, and this right-of-way will, of course, cross the county road at right angles. Since access to the new road will be limited and no access to the "thruway," as it is called, will be provided at this point, the defendants' direct access to the paved road lying to the south will be permanently blocked, although the relator is constructing a new road to run west from the southwest corner of the defendants' property which will connect with other roads lying to the west. In addition, the relator has condemned a small plot of ground along the north side of the new right-of-way about 330 feet east of defendants' west property line, for construction of a drainage ditch. In order to construct this ditch or "channel," as it is referred to, the relator must remove a retaining wall or "dam" which the defendants had constructed to control the natural surface drainage at this point.

In substance, the defendants raised two issues on the trial of this case. First of all, they apparently believe that, although the relator is constructing a new road to provide them with another means of access to their property, the new route which they shall take is not only extremely circuitous

but at times impassable, and therefore they are being denied reasonable access to the general system of highways. They also sought to show that the relator's drainage channel would in some manner interfere with the natural surface drainage on the south part of their farm. The relator attempted to show that the only loss which the defendants would suffer would be that consequent upon the taking of the approximately four acres of right-of-way which it condemned. The relator maintained upon the trial, and vigorously asserts here, in several different ways, that the trial court erroneously allowed the jury to award the defendants compensation merely because the defendants must now travel a more circuitous route to reach points south of their property. We note that both parties filed exceptions to the original award of damages made by the commissioners appointed by the trial court; the relator maintained that the original award was excessive, the defendants that it was inadequate.

 With some reluctance, we have reached the conclusion that we simply cannot decide this case on its merits. We are aware that we should finally dispose of a case before us on appeal, if possible. Rule 83.13(c), V.A.M.R.; State ex rel. George v. Mitchell, Mo.App., 230 S.W.2d 116, 120 [5]; Axsom v. Thompson, 239 Mo.App. 732, 739, 197 S.W.2d 326, 331 [8–10]. It is the duty of an appellate court to exercise its jurisdiction freely so as to provide a review upon the merits in every instance where it may properly do so. Weller v. Hayes Truck Lines, 355 Mo. 695, 699, 197 S.W.2d 657, 659. This, however, presupposes a record and evidence upon which a court can function "with some degree of confidence in the reasonableness, fairness and accuracy of its final conclusion." Phelps v. Watson-Stillman Co., 365 Mo. 1124, 1132, 293 S.W.2d 429, 435. In this case, the record is so vague and ambiguous that we cannot, with any degree of confidence, ascertain what the facts are, nor determine what principles of law should be applied.

Although the record is obscure in several respects, most of the ambiguity in this case arises out of the parties' use of a map or plat filed here as relator's Exhibit 1. This exhibit is a scale drawing, which shows the outline of defendants' property, and also shows in some detail the proposed right-of-way, the county road adjoining the farm, and the location of some of the buildings on the defendants' property. It was prepared by the relator's draftsmen and, as far as it goes, is admittedly a correct representation of the objects it purports to show. It does not, however, show any of the physical features of the tract in question, (except part of a creek) nor the location of any of the adjacent roadways, nor any segment of the route over which the defendants say they must now travel.

Mr. Hill himself testified at some length concerning the damage he had sustained because of the condemnation. A few examples of this testimony, with the observation that there is absolutely no mark nor identification of any kind indicating the direction or location of the objects or places about which he was testifying, will illustrate our difficulty. At one point, Mr. Hill was interrogated concerning the access he will have to his property after the county road is relocated. Obviously explaining his testimony, or attempting to do so, by means of the map or plat, he testified:

"Q. Is it a correct statement that the State of Missouri will build a road along here? A. Right in here?

"Q. Yes, to the west for one-half mile? A. Yes, that is right. I see what you mean now. * * *

"Q. Now, tell us from that point, how you can get to Sarcoxie? A. I can't. That is a dead-end. It will be closed. I will have to turn and go north here, because this road will dead-end.

"Q. You are talking about this road, this road that runs along here? A. Yes, it will dead-end here, and I will

have to go north and then back east. * * *

"Q. Now, to get out to Highway 166, how do you go? A. Well, I am right here, and I guess I will go a half mile south from here.

"Q. All right. You may sit down now. * * *

"Q. Now, this road that runs parallel to the road you live on that you will hit when you go one-half mile west and then turn north—now, you go north, did you say, a mile and a half? A. Yes.

"Q. Now, in that one and a half miles, tell us about that road. * * * A. The road is narrow. You go east after you have gone north for a mile and a half, and there is three spillways.

"Q. Where, on the road you travel east on? A. Yes.

"Q. When you have gone north a mile and a half, then you turn to the east, and that is the road, you say, has three spillways on it? A. Yes, you have to cross three spillways there. They are little concrete spills in the road there. * * *"

Being asked about the other routes he would have available to reach Sarcoxie and other points after construction of the new thruway, Mr. Hill testified as follows, again without marking or otherwise indicating the objects or places about which he was speaking:

" * * * A. I can get right here. Say, I am on this road that runs along the north edge here and go a half mile this way and I hit this little road in here and go a mile and a half this way, and I can go to Joplin then—go two and a half miles west here to get access to this new freeway.

"Q. That route, you say, would put you on the freeway to Joplin? A. Yes, I live right in the middle of the free way, and I can go to Joplin that way, or

I can go two miles, about two miles east here and get on the road to go into Sarcoxie. Then from right here, I can go south a mile and a half and hit 166. * * *"

It was also the defendants' position that the construction of the drainage easement had interfered with the natural surface drainage on their farm. Being asked about the location of the dam or rock wall with which he had formerly controlled the surface drainage, Mr. Hill testified in the following manner:

"Q. Where was this rock wall you have mentioned? A. It ran one thousand feet west from this ditch here up to about here, and this hog wire fence went clear around this forty. * * *

"Q. * * * tell us about the terrain of your land, and particularly in the area looking from the front of the farm to the back of it? A. It sloped off right in here, and then this right here—this back here is level. It sloped off where this ditch is, but back here it is level.

"Q. You had a low area, and you had a ditch in here. It was high in here and high here? A. Yes.

"Q. Did you have trouble with that low area flooding? A. I never did when I had the rock dam.

"Q. Did you remove that rock dam or rock wall? A. No.

"Q. Has it been removed? A. Yes."

These examples illustrate the major difficulty presented by this record. Mr. Hill was the only witness with any extensive knowledge of the physical facts; yet, time after time, upon being interrogated as to those facts, he merely answered "here," "there," "from right here" to "over there," or words of similar import, without in any way locating the place or thing about which he was testifying. Taking into consideration the scale to which the map or plat was

drawn, some of the physical facts concerning which Mr. Hill testified, such as the relocated county road and the adjoining roads, could not have appeared on the map. As a consequence, the record does not show what in fact the examiner had elicited from the witness with reference to the exhibit which was being used, and we are left without any guide as to the meaning of the testimony. So, although the defendants seem to be making the broad claim that their farm is now substantially isolated from the main-traveled portions of the general highway system, and because of this they are entitled to compensation, we cannot actually determine why the defendants claim their present access is inadequate, since we cannot compare their present route of travel with that which formerly existed. The same is true of the defendants' claim that construction of the thruway will somehow interfere with the natural surface drainage of their farm. The record is so vague in this respect that we cannot be at all sure whether the defendants' claim is that relocation of the county road will cast additional surface water onto their land, or whether they merely maintain the proposed drainage channel will prevent their going from one part of the farm to another. We cannot decipher what part of their farm is the "front" or the "back," nor do we know how their passage across the farm will be impaired, if indeed it will.

On the other hand, the relator concedes, and its proof shows that the defendants have sustained some damage. Even considering that the defendants' appraisers may have considered a basically erroneous element of damage as the relator contends, there is a remarkable difference in the assessment of damages by the relator's appraisers and the defendants'. The defendants' appraisers estimated the damage at about $9,000, while the relator's appraisers estimated it to be about $500. It is clear to us that valuable property rights belonging to the defendants have been condemned. But, on the record, we cannot tell what they are nor what just compensation would be.

We realize that the use of drawings, maps, plats and diagrams to illustrate or explain testimony is common. Anno., 9 A.L.R.2d 1046, 1047–48; McCormick, Evidence, § 180, pp. 386–87. We do not propose here to discuss the various uses to which such evidentiary devices may be put. So far as relator's Exhibit 1 had a tendency to aid in explanation of the testimony and to assist the jury in understanding the facts, its use was undoubtedly proper. Grady v. Royar, Mo., 181 S.W. 428, 432 [6]; State ex rel. State Highway Commission v. Bailey, 234 Mo.App. 168, 180–181, 115 S.W.2d 17, 24. We do not wish to discourage the practice of using such maps or plats where it appears they will be helpful. Rather, the problem with which we are dealing is the use of such exhibits without relating the testimony in any way to the exhibit. It has been suggested that the examiner should bear in mind that there may be a review of the case, and should correlate the statements of the witness with the exhibit as carefully as possible by means of some mark or symbol, or other identification, on the exhibit, Sund v. Keating, 43 Wash.2d 36, 259 P.2d 1113, 1119 [14]; Round v. Burns, 77 R.I. 135, 74 A.2d 861, 864 [4], 20 A.L.R.2d 1048, and we think that is the proper practice. And, though we find no case which has been reversed solely for that reason, it appears that on occasion courts have commented on the "worthless nature" of testimony given with reference to an exhibit such as relator's Exhibit 1, where there is no identification in the record indicating what the witness is referring to. Lynch v. Aguiar, 81 R.I. 481, 104 A.2d 554, 556 [2]; Round v. Burns, supra, 74 A.2d at 864; Bradley v. City of Niagara Falls, 6 A.D.2d 769, 174 N.Y.S.2d 145, 146. We know, of course, that the ordinary witness does not appreciate the importance of definitely locating the place or object about which he is testifying, unless counsel insist that he do so. We also appreciate that counsel, at the time of trial, are preoccupied with their burden of persuading the jury; cases are usually not, in the first instance, tried with appellate review in mind. We do not wish to be hypercritical, but the fact

remains that most of the testimony in this case was explained by use of relator's Exhibit 1, and none of the witness' statements are correlated with the exhibit. Consequently, as to the important fact issues upon which the merits of this case turn, this record on appeal is the dumbest of oracles, and we are left completely uninformed.

We find no Missouri case dealing directly with this situation. We think it is a fair general statement to say, however, that when the record is so obscure and ambiguous that an appellate court cannot ascertain what final judgment would be just because it cannot determine what principles of law are applicable, then the cause should be remanded for an appropriate presentation of the facts.[1] A similar rule has been applied in various situations by our own courts.[2] In this case, we simply could not render an opinion on the merits without resorting to speculation and conjecture as to what the facts and applicable principles of law are. Therefore, the judgment is reversed and the the cause remanded for a new trial.

RUARK, P. J., and STONE, J., concur.

1. Villa v. Van Schaick, 299 U.S. 152, 155–156, 57 S.Ct. 128, 129, 81 L.Ed. 91, 93; Baldwin v. Harrelson, 225 Ala. 386, 143 So. 558, 559 [7]; Harrington v. Interstate Business Men's Acc. Ass'n. of Des Moines, Iowa, 210 Mich. 327, 178 N.W. 19, 21 [3, 4]; Drivdahl v. International Harvester Co. of America, 43 N.D. 284, 174 N.W. 817, 819; Sanders v. Aetna Life Ins. Co., 146 Tex. 169, 205 S.W.2d 43, 46 [6, 7], 173 A.L.R. 968, 973; Taylor v. McMillan Hospital Co., 117 W.Va. 190, 184 S.E. 852; 5 Am.Jur.2d, Appeal and Error, § 962, p. 389.

2. Yaffee v. American Fixture, Inc., Mo., 345 S.W.2d 195, 201 [7, 8]; Phelps v. Watson-Stillman Co., supra, 293 S.W.2d at 435; Leggett v. Mutual Commerce Cas. Co., Mo., 250 S.W.2d 995, 998–99; Journey v. Miler, 363 Mo. 163, 167, 250 S.W. 2d 164, 166; State ex rel. Winn v. Banks, 346 Mo. 1177, 1183, 145 S.W.2d 362, 365 [6, 7]; Barnhart v. Ripka, Mo.App., 297 S.W.2d 787, 792 [10–11]. Cf. First Nat'l. Bank of West Plains v. King, Mo., 363 S.W.2d 590, 597–98 [6, 7].