Forrest BOECKER (Plaintiff), Appellant,

v.

The AETNA CASUALTY AND SURETY COMPANY and The Automobile Insurance Company (Defendants), Respondents.

No. 29237.

St. Louis Court of Appeals.

Missouri.

July 19, 1955.

Forrest Boecker, pro se.

Moser, Marsalek, Carpenter, Cleary & Carter, Morris E. Stokes, Carl R. Gaertner, St. Louis, for respondents.

HOUSER, Commissioner.

This is a suit by the insured against two insurance companies upon a policy of automobile insurance jointly issued by them.

The cause originated in the Magistrate Court of the City of St. Louis. Insured filed a petition alleging that during the term of the contract of insurance "plaintiff sustained a loss, for which defendants are obligated under their contract to indemnify plaintiff" but which insurers have failed and refused to do, and that the refusal was vexatious. Insured prayed for $132.64 under the contract plus 10% for vexatious delay and an attorney's fee. After suit was filed the insurers tendered $31, $15 under the contract and $16 accrued court costs. The tender was not accepted. Judgment was rendered for insured for $15 and costs in the magistrate court, whereupon insured appealed to the Circuit Court of the City of St. Louis. There the cause was submitted to the court sitting without a jury. Judgment was rendered for insurers and against insured at insured's cost, and the clerk was directed to pay insured the $31 deposited in court, less circuit court costs. From that judgment insured appealed to this court.

Coverage C of the policy obligated the insurer "to pay for any direct and accidental loss of or damage to the automobile, hereinafter called loss, except loss caused by collision of the automobile with another object * * *."

Coverage F obligated the insurer "to pay for direct and accidental loss of or damage to the automobile, hereinafter called loss, caused by collision of the automobile with another object * * *, but only for the amount of such loss in excess of the deductible amount, if any, stated in the declarations as applicable hereto." A $50 deductible provision appeared in the declarations.

During the term of the policy and while using the automobile in Washington State Park, insured started to drive away from a parked position on a partially improved trail. After "backing and filling for some time," the car slipped sideways on the sloping gravel surface and came to rest with a slight thud, with the right side of the car against a tree growing on the hillside. Insured got out of the car, examined it, and observed no damage. It was nighttime. There were no lights on the tree side of the car. Insured wanted to see if the car was up against the tree. He ran his hand "where it seemed the tree was up close to the car." One of the members of the party left to get "help with a tow." While he was gone insured got in the car and applied the power to the wheels, moving the car backward. Due to the slope and the gravel underneath the wheels the car scraped past the tree with a continuous contact, leaving a visible continuous scraping mark from the point where the car first came in contact with the tree, running along the right door, door post and right front fender. The pressure from the weight of the car was sufficient to make grooves or depressions in the metal. There were several striations. Insured reported the happening to the insurer, and filled out a form furnished by insurer based upon an estimate which he had received that the car could be repaired for $65. Repairs actually made cost $62.40. Although it was a good repair job it did not fully restore the car to the condition in which it was before the damage, in the opinion of insured, who testified that the use of new parts costing $132.64 would be necessary in order to accomplish this.

Insured's first point is that the loss was not directly caused by a "collision of the automobile with another object" within the meaning of the policy of insurance. Insured urges that he is entitled to the narrow construction of the term as a violent, sudden coming together of two objects and that the event described in the evidence is outside that definition; that there was no momentum and no violent contact, but merely a gentle contact between automobile and tree; that since the damage was caused while the automobile and tree were in uninterrupted and continuous contact there was no collision; that the damage was not "direct loss * * * caused by collision;" that the proximate cause of the damage was not the contact between tree and car (no damage having resulted therefrom), but that there was a new and intervening cause (the fresh application of power after the car and tree were in contact).

■ Under Comprehensive Coverage C insured is entitled to recover his loss unless the insurer is excused by the clause excepting loss caused by collision of the automobile with another object. Restrictive provisions limiting an insurer's liability are to be construed most strongly against the insurer, and any ambiguity in an insurance contract is to be resolved by adopting the interpretation most favorable to the insured and which will afford the widest scope of protection. Freese v. St. Paul Mercury Indem. Co., Mo.App., 252 S.W.2d 653, and cases cited.

■ "The verb 'collide' means 'to strike or dash against each other; to come into collision; to clash.'" Collins v. Leahy, Mo. App., 102 S.W.2d 801, loc. cit. 809. Collision, as the term is used in policies of automobile insurance, has been defined as "the act of colliding; a striking together; violent contact," and implies "an impact, the sudden contact of a moving body with an obstruction in its line of motion." Berry, Law of Automobiles, 7th Ed., Vol. 6, p. 664 et seq. In 11 C.J. 1011 the term "collision" is defined generally "as the act of colliding; a dashing or violently running together; injuries from one thing being rubbed or pressed against another; a striking against, as where the object struck is a brick, stone,

or other solid substance; a striking together * * *; violent contact." See also 15 C.J. S., Collision, p. 1.

■■ Measured by these rules and definitions there was a "collision" between the automobile and tree within the meaning of the policy provision. When the automobile slid sideways into and against the tree with a slight thud a moving body came into contact with an obstruction in its line of motion, with some degree of force. There was a striking or dashing together of one object against another. "Violent" is a relative term. No particular degree of force is required to constitute violence. Violence is broadly defined in Webster's New International Dictionary, 2d Ed., as "the exertion of any physical force considered with reference to its effect on another than the agent". It is not necessary that the impact be of sufficient force to inflict damage. Providence Washington Ins. Co. v. Proffitt, 150 Tex. 207, 239 S.W.2d 379. The striking of the automobile against the tree with but slight force was sufficient to constitute a collision.

■ The next question is whether the collision caused the loss. Before we can deny insured's claim under Comprehensive Coverage C the collision must have been the direct, efficient and proximate cause of the loss. The rule by which we determine whether a cause of injury is proximate, as approved in McCloskey v. Salveter & Stewart Inv. Co., 317 Mo. 1156, 298 S.W. 226, loc. cit. 235, follows:

" 'It is sufficient if it be the efficient cause which set in motion the chain of circumstances leading up to the injury, and which in natural, continuous sequence, unbroken by any new and independent cause, produced the injury. The primary cause will be the proximate cause where it is so linked and bound to the succeeding events that all create or become a continuous whole, the one so operating on the others as to make the injury the result of the primary cause.' "

And see Louisville & N. R. Co. v. Beatrice Foods Co., Mo.App., 250 S.W.2d 825, loc. cit. 828. As soon as insured's automobile came in contact with the tree insured got out of the car, made an inspection and discovered that the car was against the tree but undamaged. Another member of the party left to get "help with a tow." While he was gone insured decided that he could remove the automobile from this situation without assistance. He undertook to do so by applying the power to the wheels, thereby actually inflicting the damage. A natural and continuous sequence of circumstances and events reveals the collision with the tree as the proximate cause of the loss. The loss would not have occurred in the absence of the collision. The "but for" test of causal relation thus is satisfied. Having found that no actual damage had resulted from the collision and having determined that he could get out of the situation under the car's own power it was but instinctive for insured to make the attempt to do so. The act of a motorist in making an effort to extricate his automobile from a position of potential damage is ordinarily to be expected in the natural and probable order of things. His act in applying the power to the automobile was not an intervening efficient cause serving to break the chain of causation or to interrupt the natural sequence of events. On the contrary, it was but the normal reaction to the stimulus of the situation created by the primary cause —the collision. We rule that the collision was the proximate cause of the loss, as a result of which the insurance provided under Coverage C was inoperative.

Insured objects that the scraping operation which inflicted the damage was not a collision; that there can be no collision between two objects which have met and are in continuous uninterrupted contact. Whether the scraping or rubbing operation alone and by itself constituted a collision we need not determine. It is certain, however, that it was one of the natural consequences of a collision which had taken place between automobile and tree. It was the last link in the chain of circumstances beginning with that collision.

▮ Insured objects that if there was a loss caused by collision, it was not a "direct" loss. The term "direct" as used in the policy relates to causal connection and is to be interpreted as the immediate or proximate as distinguished from the remote cause. The collision was the immediate or proximate and not the remote cause of the loss, as we have seen.

Insured cites the following cases from other jurisdictions, in each of which it was held that there was no collision: Aetna Casualty & Surety Co. v. Cartmel, 87 Fla. 495, 100 So. 802, 35 A.L.R. 1013, where an automobile suddenly sank into the sand while being driven on a beach; Brown v. Union Indemnity Co., 159 La. 641, 105 So. 918, 54 A.L.R. 1439, involving a sudden contact between automobile and roadbed in an upset situation; Graham v. Insurance Co. of North America, 220 Mass. 230, 107 N.E. 915, a skidding case resulting in a capsize; and Ploe v. International Indemnity Co., 128 Wash. 480, 223 P. 327, 35 A.L.R. 999, where an automobile skidded into a tree. With the possible exception of Ploe v. International Indemnity Co., supra, these cases are readily distinguishable on the facts. The Ploe case was specifically overruled in Bruener v. Twin City Fire Ins. Co., 37 Wash.2d 181, 222 P.2d 833, 23 A.L.R.2d 385, decided in 1950.

▮ Insured's second point is that the trial court did not apply the correct measure of damages. At the trial insured testified that in order to restore the car to its former condition the use of new parts was required, and on this appeal he asserts that the proper basis for the assessment of damages is the cost of repairs necessary to restore the pre-existing condition of the automobile, citing Bauer v. Fahr, Mo.App., 282 S.W. 150. The parties having entered into a contract fixing the limits of liability, the measure of damages provided therein is controlling. Section 8 of the Conditions of the policy provided that insurer's liability for loss shall not exceed the actual cash value of a part in case of the loss of a part of

an automobile, "nor what it would then cost to repair or replace the * * * part * * * with other of like kind and quality, *with deduction for depreciation, * * *.*" Under the italicized portion of Section 8 insured is not entitled to the cost of the installation of new parts. There was no evidence of the proper deduction for depreciation. The proven damages amounted to no more than $65, under evidence that insured obtained an estimate of $65, reported to the insurer that he was damaged in the sum of $65, and that the actual repairs were $62.40. Applying the $50 deductible provision, the limit of liability of insurer under Coverage F was $15, which is the amount (plus the tender of accrued magistrate court costs) for which the circuit court rendered judgment. The point is ruled against insured.

▮ Finally, insured in his brief asks for an allowance for vexatious delay and attorney's fees, for the alleged reason that the insurer made no investigation and no effort to determine the extent of the loss, and yet refused to accept his statement of damages. The facts do not reveal a wilful refusal to pay, without reason, but rather demonstrate a prompt tender to insured of the amount due, followed by a subsequent tender in court after suit was filed in the magistrate court. There is no basis for the imposition of a penalty in this case, a fact practically conceded by insured at the time of the argument of the case on appeal.

The judgment should be affirmed and the Commissioner so recommends.

PER CURIAM.

The foregoing opinion of HOUSER, C., is adopted as the opinion of the court.

The judgment of the circuit court is, accordingly, affirmed.

ANDERSON, P. J., MATTHES, J., and WALTER E. BAILEY, Special Judge, concur.