Allean BLANKS (Plaintiff), Respondent,

v.

ST. LOUIS PUBLIC SERVICE COMPANY, a Corporation (Defendant), Appellant.

No. 30519.

St. Louis Court of Appeals.

Missouri.

Jan. 17, 1961.

Motion for Rehearing or for Transfer to Supreme Court Denied Feb. 14, 1961.

William M. Corrigan, and Frank B. Green, St. Louis, for defendant-appellant.

Jack H. Ross, Gross, Jones, Blumenfeld & Ross, and William L. Mason, Jr., St. Louis, for plaintiff-respondent.

DOERNER, Commissioner.

Plaintiff was struck by defendant's northbound motorbus on December 9, 1957, about 4:30 p. m., while crossing from the west to the east side of Broadway, near Bowen Street, in the City of St. Louis. In this resulting action plaintiff recovered a verdict and judgment for $4,000, and upon the overruling of its after-trial motions, defendant appealed.

Plaintiff submitted her case solely on defendant's alleged humanitarian negligence in failing to stop. Defendant's first assignment is that the plaintiff failed to make a submissible case under that theory, and that the trial court erred in refusing to direct a verdict for defendant at the close of all the evidence. The ultimate contention made by defendant is that at the time the plaintiff first came into a position of imminent peril the operator could not, thereafter, have prevented the injury. It asserts that as plaintiff crossed Broadway she became aware of the approaching bus, and was therefore not oblivious of her danger; that plaintiff's knowledge of the approaching vehicle narrowed the zone of peril to an area directly in the path of the bus or so close thereto that plaintiff could not stop short of that path; that defendant's duty to stop did not arise until plaintiff had reached that position; and that when she did so, it was no longer possible for the driver to have avoided the accident.

Defendant's entire argument, and the final conclusion reached, is predicated upon

its contention that the plaintiff became aware of the oncoming bus. And this contention, in turn, is not based upon an admission of that fact by plaintiff, nor upon any direct evidence, but upon its assertion that the only substantial evidence in the record is that plaintiff stopped at or about the centerline of the street to allow the bus to pass in front of her.

Since defendant does not contend that the operator could not have stopped the motorbus, and have avoided striking plaintiff, if the zone of peril extended beyond the limits delineated by it, we need not make the usual extensive statement of the facts as to relative positions, speeds, and stopping distances. Before making any statement, however, it is not amiss to say that under the circumstances here existing, where all of the evidence as to the manner in which the accident occurred came in during the plaintiff's case, we must review the evidence in the light most favorable to the plaintiff, and must give her the benefit of all favorable inferences which may legitimately be drawn therefrom. Steele v. Woods, Mo., 327 S.W.2d 187; Daniels v. Smith, Mo., 323 S.W.2d 705.

Bowen, an east-west street, terminates at its eastern end at Broadway, a north-south street, thus forming a "T" intersection. From curb to curb, Bowen is 27 feet, 2 inches wide and Broadway is about 50 feet. A bus stop for northbound buses is located on the eastern side of Broadway. The stop is about 66 feet long, and the southern end is located at a point about 15 feet north of a line extended eastwardly from the northern curb of Bowen. About 27 or 28 feet south of a line extended eastwardly from the south curb of Bowen is a street light, used as a reference point by certain witnesses. The weather was clear, headlights were not required, and the street was dry.

Plaintiff, on her way to visit a cousin, walked eastwardly on the north side of Bowen, intending to cross Broadway and take a northbound bus. Because of the injuries she received she had no recollection of how she attempted to cross the street, her memory being blank as to what transpired between the time she stood on the northwest corner of Broadway and Bowen, and the time when she regained consciousness in the City Hospital.

Lacking the benefit of her own testimony, plaintiff was forced to rely on that of an eye-witness, Henry B. Johnson, and that of defendant's bus operator, Gerald Phillips. In brief, Johnson testified that as he was driving southwardly on Broadway he saw the plaintiff walk from the west side of the street, in front of his path. However, he did not pay particular attention to her until she was in the vicinity of or had just crossed the white centerline, at which time she was about 16 feet north of the southern end of the bus stop, and was proceeding at an angle, in a northeastwardly direction, not running but moving " * * * faster than a normal pace for an old person." He placed the bus at that time at about the street light previously referred to, traveling in the first lane west of the curb lane. According to Johnson, plaintiff continued on the course stated until she was around six feet from the east curb of Broadway, and about 47 feet north of the southern end of the bus stop, having thus traveled about 40 feet during the time he particularly observed her. Johnson described the concurring movements of the bus as angling from the middle lane towards the curb, without swerving or weaving, making a normal approach to a bus stop, and placed the right side of the bus as about two feet from the east curb of Broadway at the time the impact occurred. He estimated that the bus traveled about 120 feet from the time he first observed it until the accident occurred. He stated that because of his own position he could not judge the speed of the bus, but that he saw no sudden decrease in its speed. He was asked on direct examination whether he had seen the plaintiff stop at any time while crossing Broadway, and also whether she had stopped from the time she was in the

middle of the street until the bus hit her, and to both questions he replied, "Not that I remember." On cross-examination he said that he was not sure whether or not plaintiff stopped; that he didn't know, and that she may or may not have done so.

As stated, Phillips, the operator of defendant's motorbus, was called to the stand as a witness by plaintiff. When it developed that his testimony as to when he first saw plaintiff, the then position of the bus, and certain stopping distances, all varied substantially from testimony which Phillips had given in his deposition, plaintiff, on her claim of surprise, was permitted, over objection, to read the pertinent parts of the deposition to the witness, and to ask him which was the more accurate. While he admitted making the answers in the deposition regarding stopping distances he said that he had made a mistake; but as to when he first saw plaintiff, and the then position of the bus, he stated that the answers in the deposition were "* * * more accurate because I had a better recollection of it then." The significance of the variance was that in the deposition he had said that he didn't see the plaintiff until she was about a foot west of the white centerline, and that the bus was then only about half-way across Bowen; whereas in his trial testimony he stated that he saw the plaintiff run across the west half of Broadway, and that when she reached the centerline the bus was five feet into the bus zone, which placed the bus about 33 or 34 feet closer to plaintiff.

On the issue raised here, Phillips testified on direct examination that when plaintiff reached the centerline she stopped and stood, facing due east; that the bus was then five feet into the bus zone; that he took his eyes off of plaintiff to watch out for certain utility poles along the sidewalk so the overhang of the bus wouldn't hit them; and that he didn't see plaintiff while the bus traveled 45 feet, until she appeared in front of the left front corner of the vehicle, running due east. However, on purported cross-examination by defendant's

counsel, Phillips testified that he continued to watch plaintiff until the front of the bus had passed her as she stood at the centerline. On redirect, plaintiff again claimed surprise, and was permitted to read to the witness the testimony in his deposition as follows:

"'Q  Did you see Miss Blanks at any time before the impact?

"'A  Well, when I was about, oh, I'd say halfway across the intersection I saw Mrs. Blanks—She was, I'd say, almost to the white line. She was crossing Broadway from west to east. She was almost to the white line. She had run in front of a bunch of traffic to get to the white line. She was almost there when I was about halfway across the intersection and I had to take my eyes off of her. I mean it never occurred to me that anything like this might happen and I took my eyes off of her to judge my distance going into the bus zone and, well, I didn't see her any more until, well, I was already into the bus zone almost to a dead stop and naturally I was watching the right side of my bus and she came into my line of vision.'"

The witness admitted he had so testified in the deposition, but when asked whether it was a correct statement he at first said that he hadn't meant that he took his eyes off of plaintiff and never saw her again; but when pressed as to whether his answer was correct at the time the deposition was taken and of whether he had answered truthfully, he replied that he had done so to the best of his ability and that it was a truthful answer.

It is readily apparent from the foregoing that the record falls far short of supporting defendant's contention that the only substantial evidence was that plaintiff stopped at the white line. Certainly that fact, which *defendant* sought to establish, was not confirmed by Johnson. In fact, the effect of Johnson's testimony, while perhaps negative in character, was to the contrary. As to Phillips, his testimony, on cross-

examination, that he had seen plaintiff still standing on the white line as the front of the bus passed her was not only in conflict with his statement on direct examination that he had not observed plaintiff while the bus traveled the 45 feet south of the impact; it was also diametrically opposed to what he admitted was the more accurate testimony given in his deposition. It might be argued, in fact, that the quoted passage from Phillips' deposition may be considered as substantive evidence that plaintiff did not stop at the white line, since plaintiff said therein that she was running when he first saw her at a point just west of the white line, that he took his eyes off of her, and that he did not see her again until the bus had almost come to a stop in the bus zone. On the question of whether prior contradictory *testimony* of a witness is substantial evidence see Pulitzer v. Chapman, 337 Mo. 298, 85 S.W.2d 400; Snowwhite v. Metropolitan Life Ins. Co., 344 Mo. 705, 127 S.W.2d 718; Woelfle v. Connecticut Mut. Life Ins. Co. of Hartford, Conn., 234 Mo.App. 135, 112 S.W.2d 865. In any event, the effect of the deposition was to impeach the testimony of Phillips, and the jury was entitled to choose which version it would believe. As is evident from its verdict, it did not accept that which he gave on cross-examination. Defendant's contention must be overruled.

■ Defendant's second assignment is that the court erred in giving plaintiff's verdict directing instruction No. 1 for the reason that there was no substantial evidence to support a submission of failure to stop. It states in its brief that the point is raised only to retain its right to a new trial in the event we should hold, under its first assignment, that plaintiff had not made a submissible case. Having ruled to the contrary, it follows that defendant's second assignment must likewise be overruled.

■ As its final point on appeal, defendant claims that the plaintiff's verdict directing instruction was erroneous because it gave the jury a roving commission and misdirected the jury as to where the zone of imminent peril began. The particular phrase to which the defendant objects is "* * * and if you further find that at some point while crossing Broadway Avenue, Plaintiff came into a position of imminent peril of being struck by said bus * * *." Defendant again predicates its argument on its claim that the evidence conclusively showed that plaintiff stopped at the white centerline and was not oblivious of her peril. That subject requires no further discussion. The remainder of its contention is that "at some point" is synonymous with "anywhere," so that under the instruction given the jury was entitled to find that plaintiff came into a position of imminent peril the moment she stepped from the west curb of Broadway. We have carefully examined the cases cited by defendant and find that none of them involve the factual situation of an oblivious pedestrian crossing a street. The authority cited by defendant in support of its argument that "at some point" means "anywhere" is Smithers v. Barker, 341 Mo. 1017, 111 S.W.2d 47, 51, involving a non-oblivious driver of an automobile, where the court held that under the evidence it was a misstatement to instruct the jury that the zone of imminent peril began when plaintiff "[entered] into, upon and crossing the intersection." We do not believe the phrase "at some point" is either analogous to "entering into," nor that it can be equated with "anywhere." The phrase "entering into an intersection" locates a definite place; "at some point" does not. "Entering into, upon and crossing" defines the width of the intersection, and may be synonymous with "anywhere"; "at some point" is synonymous with "somewhere," not "anywhere."

What is implied in defendant's argument is that the instruction should have specified the place where plaintiff came into a position of imminent peril. As stated in Har-

rington v. Thompson, Mo., 243 S.W.2d 519, 527, any such requirement " * * * tends to encroach upon the province of the jury, places an unnecessary burden upon the plaintiff, and may tend to confuse rather than to clarify." The identical argument made here by defendant was likewise made by it in Newman v. St. Louis Public Service Co., Mo., en Banc, 244 S.W.2d 45, where the instruction referred to plaintiff's position as "on Broadway." The court there pointed out (loc. cit. p. 48) that "This instruction required the jury to find that plaintiff was in 'a position of imminent peril,' and that was the ultimate or issuable fact for the jury to determine. These are ordinary English words. Perkins case, supra [Perkins v. Terminal R. Ass'n, 340 Mo. 868, 102 S.W.2d 915], and Bryant v. Kansas City Rys. Co., 286 Mo. 342, 228 S.W. 472." The instruction in this case required a similar finding. It is not reasonable to believe that an intelligent jury would have been misled into thinking, as defendant contends, that plaintiff came into a position of peril the moment she stepped off the west curb of Broadway, particularly in view of the fact that by another instruction the jury was told that " * * * by the term 'imminent peril' is meant a place where there is certain danger and not a place where there is just a mere possibility of an injury occurring." We hold that the instruction is not vulnerable to the attack made upon it. Price v. Nicholson, Mo., 340 S.W.2d 1.

It is therefore the recommendation of the Commissioner that the judgment be affirmed.

PER CURIAM.

The foregoing opinion by DOERNER, C., is adopted as the opinion of the court.

Accordingly, judgment is affirmed.

ANDERSON, P. J., WOLFE, J., and O. P. OWEN, Special Judge, concur.