George PAYNE, Respondent,

v.

The WESTERN CASUALTY AND SURETY COMPANY, Appellant.

No. 23940.

Kansas City Court of Appeals.

Missouri.

April 6, 1964.

Louis F. Cottey, Lancaster, for appellant.

Clare Magee, Unionville, for respondent.

HUNTER, Judge.

This is an appeal from a judgment of the Circuit Court of Putnam County, Missouri, awarding $1,250.00 to plaintiff-respondent, George Payne, for damages to his motor vehicle under the collision provisions of an insurance policy issued by defendant-appellant, The Western Casualty and Surety Company.

The pertinent provision of the policy is: "Coverage E-Collision: To pay for loss caused by collision of the automobile with another object or with a vehicle to which it is attached or by upset of the automobile, but only for the amount of each such loss in excess of the deductible amount, if any, stated in the declarations as applicable hereto; * * *"

The sole question presented on appeal is whether under the stipulated facts of the parties the damage to respondent's trailer was a "loss caused by collision of the automobile with another object" within the meaning of the policy. `

The stipulation of facts provided that the policy of insurance issued by appellant to respondent insured respondent's Ford tractor and also his Fruehauf grain trailer "against certain losses, including collision, for a period commencng July 3, 1962, and ending July 3, 1963; it being provided that defendant would pay plaintiff for any loss caused by collision with another object, excepting that $100.00 would be deducted from the actual damage.

\*   \*   \*   \*   \*   \*

"4. That on or about the 2nd day of October, 1962, while said policy was in full force and effect, plaintiff was operating the above mentioned tractor and trailer along Missouri State Highway No. 5, and when he reached a point about five miles south of Milan, Missouri, the tractor and trailer passed over a culvert upon which, in the process of construction and maintaining said highway and culvert, had been placed approximately twelve inches of dirt; but in this connection it is agreed that plaintiff's claim is not founded upon any alleged collision with such culvert; that it was raining at said time and the black-top road-bed was slippery; that immediately after crossing the elevation aforesaid, the tractor and trailer started slipping and finally went onto the soft shoulder to the right of the highway, causing tractor and trailer wheels to be suddenly and partially submerged in the soft soil, materially reducing and quickly stopping the machine's forward motion; that at said time and place the trailer was loaded with approximately 39,000 pounds of shelled corn; that the trailer did not overturn, but as it came in contact with the soft shoulder and the speed of the machine suddenly slackened and eventually came to a complete stop, the weight of the load and abrupt stoppage of the machine combined to cause the trailer to be wrenched, twisted, smashed and materially damaged. It is agreed between the parties hereto that neither the tractor nor trailer came in contact with any object other than the soft shoulder of the highway.

"5. That the damage to the trailer was in the sum of $1,350.00; that plaintiff has made demand of and from defendant company for the sum of $1,250.00, but that defendant has refused payment of such sum or any part thereof.

"6. That plaintiff has duly executed and furnished defendant proof of loss and has otherwise complied with all conditions required of him by said contract of insurance, but defendant has denied liability.

"7. The parties hereto do not agree on whether the refusal to pay was vexatious, but agree that this question shall abide the decision of the trial court or, if appealed, the decision of the appellate court."

Although there are numerous decisions concerning the application of this same type of insurance clause to situations where it is claimed a motor vehicle was damaged by striking another object by contacting some part of the road or shoulder of the road or something thereon, our research has not disclosed any case with facts like those before us. However, a review of the results of the more pertinent of those cases and the principles upon which they were decided is of benefit to an understanding of the precise question we must rule.

■■■ Generally speaking, the determination of whether there has been a *"collision"* within the intent and meaning of the policy involves (1) whether there was an object which was struck, and (2) the manner of the striking. As noted by the authorities, there is an irreconcilable conflict in the efforts of the various courts in construing the meaning and application of the word "collision" as it appears in insurance policy clauses of the type before us. Some courts construe the word narrowly by limiting its meaning to a so-called "popular conception", i. e. the striking with force some foreign or perpendicular object, and thereby exclude contact with the ground of the highway or shoulder. The majority of the courts, often noting there is no proof that the word "collision" has some commonly known and generally recognized restrictive meaning in insurance contracts take the viewpoint that the word "collision" should be defined broadly and in its dictionary sense to mean "striking together" or "striking against", thus including every contact with any part of the highway. See, Annotations, 23 A.L.R.2d 389, 105 A.L.R. 1428; 42 A.L.R. 1130; 40 A.L.R. 999; 35 A.L.R. 1030; 30 A.L.R. 807; 26 A.L.R. 429; 14 A.L.R. 188. In Missouri in principle we have adopted the more liberal construction. In Boecker v. Aetna Casualty and Surety Co., Mo.App., 281 S.W.2d 561, 563, the St. Louis Court of Appeals stated: "Collision, as the term is used in policies of automobile insurance, has been defined as 'the act of colliding; a striking together; violent contact,' and implies 'an impact, the sudden contact of a moving body with an obstruction in its line of motion.' Berry, Law of Automobiles, 7th Ed., Vol. 6, p. 664 et seq. In 11 C.J. 1011 the term 'collision' is defined generally 'as the act of colliding; a dashing or violently running together; injuries from one thing being rubbed or pressed against another; a striking against, as where the object struck is a brick, stone, or other solid substance; a striking together * * *; violent contact.' See also 15 C.J.S., Collision, p. 1. * * * 'Violent' is a relative term. No particular degree of force is required to constitute violence. Violence is broadly defined in Webster's New International Dictionary, 2d Ed., as 'the exertion of any physical force considered with reference to its effect on another than the agent'." And see, Boenzle v. United States Fidelity & Guaranty Co., Mo.App., 258 S.W.2d 938(6).

■■■ We believe the use of the dictionary or broad definition of the word "collision" is sound for it is in accordance with the fundamental principle of construction of insurance contracts that where reasonable to do so such contracts are to be construed in favor of the insured so as to provide coverage and against the insurers who drafted the instrument.

We next consider how various courts have defined the word "object" as contained in this type of policy provision, for the policy clearly requires that there must be a collision of the automobile with another object. Here, the myriad of cases on the subject are in apparent general accord in that they hold the rule of ejusdem generis to be inapplicable and support the general rule that the word "object" means anything tangible and visible and is not confined to objects similar to an automobile or another vehicle. We follow this definition in Missouri. See, Rouse v. St. Paul Fire & Marine Ins. Co., 203 Mo.App. 603, 219 S.W. 688. A slightly different definition, but helpful, was given by the court in Columbia Ins. Co., Jersey City, N. J. v. Chatterjee, 93 Okl. 249, 219 P. 102, where the word "object" was said to mean "any tangible thing, visible or capable of discernment by the senses, which offers an impediment or resistance to another object in motion."

Courts which have ascribed to a dictionary or broad definition of the word "collision" have held that an impact between a motor vehicle and obstacles on the road such as rocks, barricades, holes, excavations, and washouts are collisions with another object within the policy provisions. See, 23 A.L.R.2d Sec. 6, page 403. On the other hand it has been held that contact of an automobile with the road itself, as where the road surface is irregular or has rough spots, does not constitute a collision with an object within the meaning of the policy, and this sometimes because of a general feeling that the policy as "popularly understood" was not intended to furnish coverage for that type of accident and sometimes because it was felt that since the automobile wheels were already in constant contact with the highway surface and in a sense striking it as the wheels turned around the collision clause was intended to refer to some other object than the road upon which the automobile is being driven. As stated in Great Eastern Casualty Co. v. Solinsky, 150 Tenn. 206, 263 S.W. 71, 35 A.L.R. 1013, "Being already upon the road, and in contact with it, there can be no collision in the sense that the term contemplates two separated objects coming together."

However, it is obvious from a study of the decisions that where the impact or striking occurs other than on the road proper, i. e. not on that part constructed, intended and used for travel thereon, the tendency is more liberal toward finding coverage upon impact between the vehicle and another object, including those formed by the terrain. Examples are impact with ruts, embankments, ditches, shoulders, ledges, slopes, ridges, earth at bottom of decline and other things. See, Annotation, 23 A.L.R.2d, Section 13, page 421; 6 Blashfield, Cyc. of Automobile Law and Practice, Sec. 3691, pages 286–289; 5 Appleman, Ins. Law and Practice, Section 3201, page 340–346; 45 C.J.S., Insurance, § 797, page 836–838; 5A Am.Jur., Automobiles, Section 59, page 59.

After considering these authorities we are persuaded that in line with the general rules as applied by what we believe to be the better reasoned cases the collision coverage provisions of the policy before us should be construed to cover the stipulated incident. It is apparent from the agreed facts that when the tractor-trailer left the paved portion of the highway and its wheels were "suddenly and partially submerged in the soft soil" there was sharp impact between those wheels and the somewhat perpendicular dirt immediately in contact with those wheels in front of them, offering an impediment and obstacle to such an extent that the vehicle's speed was "suddenly slackened" * * * "materially reducing and quickly stopping the machine's forward motion"; causing an "abrupt stoppage" of the vehicle, resulting in extensive damage. Differently stated, when the wheels went off the paved road and suddenly submerged they necessarily collided with the solid bank of earth in front of them which constituted a sudden, immediate and substantial obstacle to their forward progress. It was a sudden contact of a moving body, the

vehicle, with an obstruction in its line of motion. This solid bank of earth was not a part of the regular roadway intended and used for travel. It presented as much a barrier or obstacle to the forward motion of the vehicle as a substantial ridge or ledge would to an automobile traveling on a solid shoulder.

There is another factor supporting the result we have reached. If the insurer had desired to absolve itself from collisions of this character it should have tendered a policy containing appropriate restrictive or limiting clauses. Numerous policies have been written excluding damages occasioned by collisions with portions of the roadbed, some specifically excluding the shoulders, and the insurance companies must be presumed to know how to accomplish this. See Rouse v. St. Paul Fire & Marine Ins. Co., supra; Annotation, 23 A.L.R.2d, Section 11, page 415; Gibson v. Georgia Life Insurance Co., 17 Ga.App. 43, 86 S.E. 335; Hoosier Mut. Automobile Ins. Co. v. Lanam, 79 Ind.App. 629, 137 N.E. 626.

■ The remaining question is whether the insurer is guilty of vexatious delay in refusing to pay the claim. The precise question presented to the insurer was novel and not entirely free of reasonable debate. There is nothing to indicate that the insurer did not act in good faith. Under such circumstances it is entitled to have the issue involved passed upon without the imposition of a statutory penalty for vexatious refusal to pay. The trial court did not err in refusing to award damages for vexatious delay. See, Section 375.420 RSMo.1959, V.A.M.S.; Delametter v. Home Ins. Co., 233 Mo.App. 645, 126 S.W.2d 262; Bechtolt v. Home Ins. Co., Mo.Sup. 322 S.W. 2d 872.

The judgment is affirmed.

All concur.