Paul Edward WELCH,
Plaintiff-Respondent,

v.

WESTERN CASUALTY AND SURETY
COMPANY, Defendant-Appellant.

No. 10703.

Missouri Court of Appeals,
Springfield District.

June 16, 1978.

Motion for Rehearing or Transfer
Denied June 30, 1978.

Application to Transfer Denied
July 24, 1978.

Albert C. Lowes, Thomas A. Ludwig, Buerkle, Buerkle & Lowes, Jackson, for defendant appellant.

Hal E. Hunter, Jr., Hunter & Hunter, New Madrid, for plaintiff respondent.

Before BILLINGS, C. J., and HOGAN and TITUS, JJ.

HOGAN, Judge.

In this court-tried action upon an automobile insurance policy, plaintiff has had judgment in the amount of $10,000 with interest at the rate of eight (8%) percent from July 27, 1976.[1] In addition, the trial court has allowed plaintiff damages in the sum of $1,000 and an attorney's fee in the amount of $3,333 under the provisions of the vexatious delay statute, § 375.420, RSMo Supp.1975. Defendant appeals.

The case involves physical damage to a 1970 International dump truck owned by the plaintiff and insured by the defendant under a "fleet schedule." The insured vehicle was damaged while it was being used to haul sand from a sand and gravel pit near Caruthersville to a construction site on Interstate Route 155. Plaintiff's driver was attempting to maneuver the truck across a large hole which extended completely across the access road. Either as the truck went in, or was coming out of the hole, the frame of the truck broke on both sides, directly behind the cab. Depending on which version of the facts one accepts, the truck did or did not strike the side of the hole before collapsing.

A number of issues were developed on trial, but the focal matter in controversy was whether plaintiff's damage was caused by collision or by "mechanical breakdown" of the frame. The frame of the truck had been extended to accommodate a 14-foot dump truck body. Plaintiff's position was that his truck was in good mechanical condition before the frame broke and that his damage was the result of a collision with the side of a large hole in the road. Defendant's position was that when the frame was extended, the work was improperly done and in consequence the frame was unduly rigid at the point of extension and was unsuitable for ordinary use. Defendant's evidence suggested that the frame had broken at least once before the loss occurred, that it had been ineptly repaired and had already begun to buckle before it finally broke on both sides on July 1, 1976, the date of the loss in issue. Defendant claims it is not liable because the loss was sustained as a result of "mechanical breakdown."[2]

1. July 27, 1976, appears to be the day the insurer denied its liability. The transcript filed here does not indicate the date of trial nor the date of entry of the judgment.

2. We can take no account of the possible effect of "comprehensive" coverage here. Item 3 of the policy declarations states that "[T]he insurance afforded . . . is only with respect to such of the . . . coverages as are indi-

cated by specific premium charge . . ." No premium was charged or paid for comprehensive coverage, and consequently the comprehensive coverage provision is not an effective part of the contract. See: *Barnard v. Houston Fire & Cas. Ins. Co.*, 81 So.2d 132, 54 A.L.R.2d 374 (La.App.1955); 5 Appleman, Insurance Law & Practice § 3222, p. 692 (1970) [hereinafter cited as *Appleman*].

■ In this court, the defendant has briefed and argued six assignments of error. We shall consider each point briefly, but we are in candor obliged to note that both the appellant's brief and the record come to us in an unsatisfactory state. Counsel for the defendant has condensed approximately 122 pages of testimony into a 2½-page statement and he has, inadvertently or otherwise, omitted reference to a good deal of the testimony favorable to the plaintiff. Further, there is little or no coordination between the testimony and the exhibits. Rule 84.04(c), V.A.M.R., which calls for a "fair and concise" statement of the facts relevant to the questions presented for review, is rarely complied with literally, but it is nonetheless a violation of the rule to state the relevant facts in argumentative language and to ignore facts adverse to the appellant's position. *Cady v. Kansas City Southern Ry. Co.*, 512 S.W.2d 882, 885[6] (Mo.App.1974). Likewise, when we are presented with record testimony which shows that the witness is explaining or testifying from an exhibit—such as defendant's exhibit 1—but the exhibit bears no marks indicating what the witness meant when he answered "right here" or "up this way," this court cannot visualize the position of the witness' finger upon the exhibit, and our ability to perform our proper appellate function is severely impaired. See *State ex rel. State Highway Commission v. Hill*, 373 S.W.2d 666, 670–671[3] (Mo.App. 1963). We do not believe nor suggest that counsel for the appellant has intentionally sought to distort the facts nor mislead this court, and we have no thought of dismissing the appeal; nevertheless, we are not experts in the art of welding, nor the technical aspects of extending truck frames, and are in a poor position to judge the accuracy of defendant's assertion that it "prove[d] this particular truck was improperly constructed and could not withstand normal use."

■ The first point briefed is that plaintiff's loss was not the result of a "collision with another object." It is true that defendant's policy in terms limits its liability· to "loss caused by collision of the automobile with another object" and it is further true that that seemingly innocuous phrase has been "construed" to the point of distraction[3] but defendant's point need not detain us long. Our courts have consistently held that the noun "collision" as it appears in automobile insurance policies should be given its everyday, pedestrian meaning so as to include any "striking together" or "striking against," *Payne v. Western Cas. & Sur. Co.*, 379 S.W.2d 209 (Mo.App.1964); *Boecker v. Aetna Cas. & Sur. Co.*, 281 S.W.2d 561 (Mo.App.1955), and in Missouri, the word "collision" connotes no particular degree of force. *Boecker v. Aetna Cas. & Sur. Co.*, supra, 281 S.W.2d at 564[3, 4]. The only witness with direct, personal knowledge of the accident was DeLisle, the plaintiff's driver; he testified, twice, that the frame collapsed when plaintiff's truck struck "the other side" of the hole. The fact that DeLisle made contradictory statements in a pretrial deposition is of no consequence. The trial court was at liberty to accept DeLisle's trial testimony and reject the contradictory statements made in his deposition. *Moore v. Ready Mixed Concrete Co.*, 329 S.W.2d 14, 20[2, 3] (Mo. banc 1959); *Cox v. Moore*, 394 S.W.2d 65, 67, and authorities cited n. 1 (Mo.App. 1965); *Blanks v. St. Louis Pub. Serv. Co.*, 342 S.W.2d 272, 276[2] (Mo.App.1961). The trial court did not err in finding there was a "collision."

The other aspect of this point amounts to a strained and tenuous argument that in no circumstances can a chasm, hole, rut or other declivity in the roadway be considered another object. Respectable authority demonstrates the contrary is true. See: *Haik v. United States Fidelity & Guar. Co.*, 15 La.App. 97, 130 So. 118 (1930) (hole 6 feet deep, partially filled with bricks wood and dirt, held "another object"); *Tinker v. Boston Ins. Co.*, 106 Okl. 206, 233 P. 1058 (1923) (side of chasm 50 feet deep held "another

---

3. See Annots., 23 A.L.R.2d 389 (1952); 105 A.L.R. 1426 (1936); 42 A.L.R. 1130 (1926); 40 A.L.R. 999 (1926); 30 A.L.R. 806 (1924); 26 A.L.R. 429 (1923); 14 A.L.R. 188 (1921).

object"); *Wood v. Southern Cas. Co.,* 270 S.W. 1055 (Tex.Civ.App.1925) (side of a rut held to be "another object"). Generally, see 7 Am.Jur.2d Automobile Insurance § 63 (1963).

We realize contrary authority may readily be found; the general law was thoroughly discussed in *Payne v. Western Cas. & Sur. Co.,* supra, 379 S.W.2d at 212[4]. We are not prepared to hold, nor suggest, that every pothole in the road is "another object" as that term is used in automobile insurance policies, and we decline the defendant's invitation to decide abstractly the point at which a defect or hole in the road ceases to be part of the road and becomes "another object." The hole into which plaintiff's truck was driven ran the entire width of the roadway—20 feet, according to defendant's exhibit 1–A, which was admitted without objection. The hole was 10 to 15 feet across; plaintiff's testimony was that the hole dropped off ". . . very abrupt" and was at its deepest point 1½ feet deep. One Charles Tatum, another truck driver, described the hole by saying ". . . [I] come up on the hole and I seen it, and I had done slowed down considerably. I had to lock my truck up pretty good to keep from damaging [it]. I run up on the hole and I come to a complete stop to get across it. It was completely across the road, and it was at least fifteen inches deep, or more . . . ." There were other descriptions, or characterizations of the hole, as a "washed out" place, or mere "soft spot" in the road, but the trial court was free to reject those descriptions. Ruling the point very subjectively and on its peculiar facts, we believe the side of the hole which plaintiff's vehicle struck was "another object" within the intent and meaning of the policy. As we have seen, the trial court could have found there was a "collision"; because the side of the hole was "another object," it follows there was a "collision with another object" and defendant's point is without merit.

Defendant's second assignment of error is more complex. Defendant argues that it is not liable here because the policy, under the heading "Exclusions," provides:

"[T]his policy does not apply under [the physical damages coverages]: . . . (b) to (1) any damage to the automobile which is due and confined to wear and tear, freezing, mechanical or electrical breakdown or failure, unless such damage is the result of other loss . . . ."

The language of this exclusionary clause is admittedly confusing, but it is usually construed to cover *all* damages directly or solely caused by mechanical breakdown.[4] In our opinion, the foreign precedents do not clearly define the required degree of correlation between the excluded peril and the resulting damage, but this appeal does not require us to distinguish them. Our courts long ago adopted a rule of "proximate loss" or "proximate cause" to determine whether a particular loss has been sustained as a result of an insured peril or otherwise. *Newmark v. Liverpool & London Fire & Life Ins. Co.,* 30 Mo. 160, 163–164[1] (1860); *Delametter v. Home Ins. Co.,* 233 Mo.App. 645, 655–658, 126 S.W.2d 262, 265–267[1] (1939). In context, the collision was a "proximate cause" of the loss if it was an efficient and producing cause, *Boecker v. Aetna Cas. & Sur. Co.,* supra, 281 S.W.2d at 564[5–7]; 5 Appleman, § 3083, pp. 309–310, and whether exposure to an insured peril or some other cause was the "proximate cause" of a loss is ordinarily a question for the trier of fact. *Hart-Bartlett-Sturtevant Grain Co. v. Aetna Ins. Co.,* 365 Mo. 1134, 1151[5], 293 S.W.2d 913, 924–925[7] (1956), cert. denied, 352 U.S. 1016, 77 S.Ct. 562, 1 L.Ed.2d 548 (1957); *Delametter v. Home Ins. Co.,* supra, 233 Mo.App. at 661, 126 S.W.2d at 268[4]; *Terrien v. Pawtucket Mut. Fire Ins. Co.,* supra, n. 4, 96 N.H. 182, 71 A.2d at 745[2].

---

4.  *Fireman's Fund Ins. Co. v. Cramer,* 171 So.2d 220, 223–228 (Fla.App.1964) (Sturgis, C. J., dissenting) vacated *Fireman's Fund Ins. Co. v. Cramer,* 178 So.2d 581 (Fla.1965) (adopting dissent filed in District Court of Appeal); *Terrien*

*v. Pawtucket Mut. Fire Ins. Co.,* 96 N.H. 182, 71 A.2d 742, 746[5] (1950); *Lunn v. Indiana Lumbermens Mut. Ins. Co.,* 184 Tenn. 584, 201 S.W.2d 978, 979–981[1][2], 171 A.L.R. 259, 261–263 (1947).

■ The defendant's specific point, as we follow the "argument" part of its brief, is that the frame broke because it had been extended and braced in a manner which made it extremely rigid and unsuitable for normal use. The record, to the extent it is intelligible, indicates that the frame of plaintiff's truck was originally extended by Don Curry, who was in the "truck-implement business." Curry had lengthened 250–300 truck frames. He modified plaintiff's truck by cutting the frame and "weld[ing] an additional two pieces of frame in it and box[ing] the sections inside." By "boxing" Curry meant he "added four pieces of material to form a box on the inside of the frame channel, to give it added reenforcement." As Curry recalled, the frame was extended 42 inches. Curry had not "bridged" the frame; he did not believe it was required because the frame extension was relatively short. After the plaintiff bought the truck, the frame was "bridged" by a Mr. Oberbeck. The plaintiff, testifying from a diagram which is not in evidence, stated that the "bridging" or additional reenforcement consisted of welding a piece of metal on the bottom of the frame rail, "like so." Curry was asked if "bridging" the frame would "create a severe weakness" either "in front of where it is or immediately behind it." Curry replied that "bridging" would "create an extreme rigid situation at the point where they put the sway brace." Curry's testimony was that the frame collapsed "due to an undue stress situation." An impact or severe jolt would cause such a break, but in Curry's opinion, normal operation of the truck would not. On cross-examination, Curry stated that if the truck had been subjected to extremely rough usage, and the frame had cracked, then it might "go ahead and come apart."

The defendant had testimony from Lewis Haman, who was service manager for a truck and trailer sales at Cape Girardeau. At defendant's request, Mr. Haman examined plaintiff's truck on November 15, 1976, some 4½ months after it was damaged. Haman determined that the frame had been extended to accommodate a 14-foot bed, that a "bridge type" support had been welded underneath the frame, that the bridge or "strap" stopped right behind the cab, and that the frame of the truck had broken in two on both sides "right at the end of the bridge work, on the strap." Haman had the opinion that there had been three separate failures of the frame structure. He demonstrated the basis for this opinion by indicating certain marks or objects on a series of color photographs, standing, apparently, where the trial court could observe his indications. We cannot, of course, follow this testimony and the photographs themselves indicate nothing more to this court than they did to plaintiff's witness Curry, who said that they indicated "a mass of broken metal." In any event, and without prolonging this opinion unduly, Haman was finally permitted to give it as his opinion that the cause of the break was "progressive damage." He explained his opinion thus: "[T]his particular frame was weakened by this particular strap or reenforcement strap we have been talking about. [The frame] had to flex right there and had progressive damage and after so long a time, it finally gives way." Haman's opinion was that the break was "strictly a mechanical failure." He was permitted to say that he found no damage indicating a collision.

In rebuttal, the plaintiff called a truck mechanic, Jack Fielder, who had worked on the plaintiff's truck shortly before the loss occurred. Fielder had "pulled all of the suspension out from underneath the rear end of the truck and replaced all of the bushings, removed the transmission and repaired it and put it back in." Fielder had examined the frame, and found no damage to the frame anywhere.

From this evidence, which has been condensed and summarized to some extent, the defendant asks us to draw the conclusion, as a matter of law, that plaintiff's loss was caused by "mechanical failure." Defendant cites no factually similar case nor any principle of law which compels such a conclusion. In the course of a reasonable independent research, we have found only one case closely comparable on the facts, and

there the court drew the conclusion that the question of "proximate cause" was a question for the trier of fact. *Terrien v. Pawtucket Mut. Fire Ins. Co.*, supra, n. 4, 96 N.H. 182, 71 A.2d at 745[2]. Here, there was evidence that the access road was very rough; there was evidence that the frame had been weakened, and evidence of a collision. A trier of fact could find that rough usage contributed to the loss, that improper reenforcement of the frame contributed to cause the loss but still find that the collapse would not have occurred in the absence of the collision. Such a conclusion would satisfy the requisite finding of correlation between the insured peril and the loss. *Boecker v. Aetna Cas. & Sur. Co.*, supra, 281 S.W.2d at 564. We are cautioned to reverse the judgment in a bench-tried case on the ground it is against the weight of the evidence only when we entertain a firm belief that the judgment is wrong. Rule 73.-01(3)(a), V.A.M.R.; *Murphy v. Carron*, 536 S.W.2d 30, 32[2] (Mo. banc 1976). This record generates no such firm belief.

■ There is considerably more merit in the defendant's argument that the penalty for vexatious delay was erroneously assessed. As stated, the trial court awarded the plaintiff $1,000 damages and an attorney's fee in the amount of $3,333, all presumably pursuant to the vexatious refusal statute, § 375.420, RSMo Supp.1975.

Reminding the carrier that the relation between insurer and insured is *not* an adversary relation, we believe the evidence falls short of establishing vexatious delay in this case. The plaintiff reported the accident to his insurance agent, one Brady Holland. Holland inspected the damaged truck "the next morning" and found no evidence of any collision. Holland told the plaintiff he would investigate the accident and he did so.

The carrier assigned the claim to Edward Flammger, a claims adjuster with 19 years' experience. Flammger talked to the plaintiff and to DeLisle. Flammger's testimony was that as DeLisle related events to him, there had been no collision. Flammger "looked for the truck" and found it in a salvage yard at Caruthersville or at Hayti. Drawing the conclusion that there had been no "collision" within the meaning of the policy, Flammger denied the claim.

■ An insurer may question an issue and contest an issue of fact relating to its liability if it has reasonable cause to believe and does believe that there is no liability under its policy and that it has a meritorious defense. Of course, the mere fact that the judgment is adverse to the defendant is not a sufficient reason for imposing the penalty. *Groves v. State Farm Mut. Auto. Ins. Co.*, 540 S.W.2d 39, 42[1, 2] (Mo. banc 1976).

As we have noted at some length, the occurrence vel non of a collision was a fact question in this case; as we have tried to make clear, it is our opinion that the trial court *could* have found there was none. Further, the policy coverage was more limited than is usually the case; the "comprehensive" coverage did not obtain. We find no basis here for the imposition of a penalty for vexatious refusal to pay.

■ The defendant has argued two further points. The first of these points is that the trial court should have deducted the value of the salvage and the amount "deductible" under the policy. The carrier's argument is wholly unsupported by any authority—except a quotation from Black's Law Dictionary—which is remotely germane to the appeal. The rules pertaining to appellate briefs contemplate the citation of some specific governing or persuasive authority indicating error. Rule 84.04(d); *In re Estate of James*, 459 S.W.2d 536, 540–541[5] (Mo.App.1970). We have, of course, been over the law governing the carrier's liability in case of a collision loss, see, e. g., *Myers v. American Indemnity Co.*, 457 S.W.2d 468, 470–471 (Mo.App.1970), but in the absence of any citation to authority bearing on the question, we decline to become advocates for the carrier and consider its argument on its merits.

■ The appellant also complains of the trial court's allowance of interest on the judgment at the rate of eight (8%) percent

from July 27, 1976, until the judgment is satisfied. No complaint is made of the date from which interest was allowed. Counsel for the respondent concedes that interest should have been allowed at the rate of six (6%) percent and we agree. § 408.040, RSMo 1969. Inasmuch as it appears a new trial would not produce any additional evidence of damages, however, remand is unnecessary. *Brugioni v. Maryland Cas. Co.*, 382 S.W.2d 707, 713[9] (Mo.1964).

Accordingly, the judgment in favor of the plaintiff and against the defendant is reversed and the cause is remanded with directions to enter judgment in favor of the plaintiff and against defendant Western Casualty and Surety Company as of the date of the original judgment for the sum of $10,000, with interest thereon at the rate of six (6%) percent from July 27, 1976, to the date of entry of the judgment, the said judgment so rendered to bear interest at the rate of six (6%) percent as provided by § 408.040, RSMo 1969.

All of the Judges concur.